## HILMA OLSON v. E. C. CARLTON AND ANOTHER.[1]

June 21, 1929.

No. 27,325.

*Mead & Bryngelson,* for relators.
*Lynn S. Helgerson,* for respondent.

HILTON, J.

Certiorari to review an order of the industrial commission awarding compensation to the widow of Ed. William Olson, a deceased employe.

[1]Reported in 225 N. W. 921.

Olson, aged 49 years, a plumber by trade, had been continuously for more than 12 years prior to his death from pneumonia on Thursday, April 7, 1927, in the employ of relator-employer. The referee twice made finding No. 3, which was affirmed by the commission, to the effect that on Tuesday, March 29, 1927, the deceased sustained an injury to his head, which accident and injury arose out of and in the course of his employment. A stipulation appears in the record warranting this finding, and it is also amply supported by the evidence.

■ But one question is here involved: Was there a causal connection between the injury sustained on March 29 and Olson's death nine days thereafter? On December 27, 1927, as a result of the first hearing, the referee held adversely to petitioner and denied compensation. On appeal, supported by numerous affidavits, the commission, on May 18, 1928, vacated and set aside the decision of the referee and ordered a hearing de novo before the referee of the issues involved with the right to use testimony appearing in the previous record. Such hearing was had, with the same result. Paragraph 7 of the referee's finding was to the effect that Olson's death from pneumonia on April 7, 1927, was not the result of accident and injury arising out of and in the course of his employment with the relator-employer on March 29, 1927, nor was there a causal connection between such accident and injury and his subsequent death. The commission, by two of the three members, on appeal held that this finding number 7 and the decision of the referee *are not in accord with the evidence;* vacated and set aside the finding of the referee; and substituted for finding number 7 the following:

"That the death of Ed. William Olson, deceased employe herein, from pneumonia on April 7, 1927, was the result of an accidental injury arising out of and in the course of his said employment with the above named employer on March 29, 1927, and that there was a causal connection between such accident and injury to said employe on the aforesaid date and the subsequent death from pneumonia."

The commission, by the same majority, awarded compensation at the rate of $19.80 per week from and after April 7, 1927, during dependency, not exceeding the total sum of $7,500, together with funeral expenses and the costs of medical treatment.

Prior to the accident Olson had not been ill for many years, was a strong, vigorous man, five feet ten inches in height, weighing approximately 180 pounds, and showed no evidences of any cold or any premonitory symptoms indicating an attack of pneumonia. For four days, including March 29, the temperature in Minneapolis ranged from 22 to 48 above zero. While at work for his employer in the basement of a house under construction, at about 10:30 a. m. of the day of the injury, a moving jack weighing 30 or 35 pounds fell from a cross-beam, a distance of five or more feet, striking Olson on the back of the head as he was in a kneeling position; a hammer held in his hand flew up and hit him in the mouth, knocking out two teeth. Olson at once sank to the floor, lay there limp, and was unconscious for four or five minutes. He was cared for by his helper and seemed to be in a dazed and dizzy condition the rest of the day. Although occasionally trying to work, he was practically unable to do any, one witness stating that a man in 20 minutes could do all the work Olson did during the remainder of the day. He was unable to eat his lunch and spent much of the time sitting on the stairs in the damp basement, the cement floor of which had recently been laid and was barely hardened; the house was damp, having just been plastered.

Immediately after regaining consciousness and during the day, Olson frequently referred to his injury and stated he was feeling bad. With his helper he left the house for his home before the usual quitting time and drove a truck in an uncertain and unusual manner upon the streets of Minneapolis. On arriving at his home he looked pale and was in distress. He was at once undressed by his wife and put to bed; his clothing was damp; in bathing him his wife noticed the bump on his head. He took no nourishment but water for several days. He groaned in his restless sleep. He remained in bed until his death, except when assisted to the bath-

room some 15 feet away prior to Friday afternoon. On Thursday he began to cough; pneumonia was developing rapidly. On Friday his physician attended him. Day and night nurses were then put on the case, but he continued to grow worse, the dazed condition remaining all the time.

The doctor found a rattling in both lungs, a bruise on the back of his head, a paralysis of an eyelid, and inability to move his arm. He testified:

"Due to the injury to the back of his head and neck, or rather, the main injury was below the occiput, there was some concussion of the brain, some disturbance of the brain that caused a lowering of his resistance, and I think that was the reason his lungs started to fill up. It interfered with his breathing."

Testimony of five doctors was to the effect that the concussion caused by the falling jack upset Olson's nervous system in general and weakened him; made him naturally susceptible to such an infection; the injury impaired his circulation; his remaining inactive for so long a time in the damp, cold house lowered his vitality enough to develop pneumonia. Certainly, in the light of such testimony and the succession of events from the time of the injury to the death, there was a sound basis for at least a reasonable inference that as a direct result of the injury the cold and dampness for many hours while he remained inactive in the house brought on the pneumonia from which Olson died.

A lay member of the commission, writing a memorandum for the majority, among other things stated:

"There is positive medical testimony in the record that the accident Olson suffered on March 29, bore no relation to his death April 7. There is also equally positive medical testimony in the record that the accident, rendering the employe unconscious for a short period and causing him to be inactive for the balance of the day in a house that had been recently plastered, made Olson susceptible to the pneumonia which caused his death. Olson's apparently normal condition immediately prior to the accident and the

unbroken chain of events following the accident compels us to accept the medical theory of the doctors for the petitioner and award the widow of the deceased compensation as provided by law in .fatal accidents."

Relators single out the statement as to the medical testimony as a basis for a claim that the necessary burden of proof had not been sustained by respondent. Under all the facts in this case, and considering the other statements made by the commission, the claim of relators is without merit.

A further recital of the facts is not necessary, nor need we further comment on the situation. Suffice it to say that the evidence more than justified the final conclusion reached by the commission. A causal connection between the accident and the pneumonia that caused the death is established more conclusively than is usually the case. The result does not rest upon speculation or conjecture. We have examined the cases cited by relators in brief and oral argument and have no difficulty in distinguishing them. In them we find no such natural sequence of events; no rapid and speedy dissolution; no comparable related injury to the physical structure of the body which, by any probability, could have so weakened the injured party as to bring about death.

Pneumonia resulting from mere exposure is not compensable under our. compensation act. Relators refer to the case of Costly v. City of Eveleth, 173 Minn. 564, 218 N. W. 126. It is clearly distinguishable from the one at bar. Costly died from bronchial and lobar pneumonia contracted after exposure, chill and some inhalation of smoke while in the performance of his duties as a member of the fire department. Costly did not sustain an injury to the physical structure of his body prior to the time of the exposure; Olson did. Costly lived 39 days after his exposure; Olson rapidly succumbed to the ravages of pneumonia and lived only nine days after his accident.

■ Relators advance the proposition that the commission was bound by the finding of the referee if there was any competent legal evidence sustaining such finding and that it was not author-

ized to substitute its judgment on the effect of the evidence. The familiar rule is invoked which this court applies to itself when reviewing the action of a district court, a jury, or the industrial commission. That rule does not govern on an appeal to the commission from the findings of a referee.

G. S. 1923 (1 Mason, 1927) §§ 4303, 4315, provides as follows:

"4303. When a claim-petition or other petition is presented to the Industrial Commission, the Commission shall, by general rules or special order, either direct it to be heard by the Commission or assign it to a commissioner or a referee for hearing."

"4315. On any such appeal the commission may  *  *  *  substitute for the findings of the commissioner or referee such findings of fact as the evidence taken before the commissioner or referee  *  *  *  may, in the judgment of the commission, require."

The uniform practice of the commission has been to affirm or reverse the referee whenever it deemed such a course was justified. This court in Hogan v. Twin City A. T. Estate, 155 Minn. 199, 201, 193 N. W. 122, stated:

"The testimony being in conflict, an issue of fact was present and the determination of the question was for the referee, and, on appeal from the referee, for the commission."

On appeal to the commission from the action of the referee the commission is a fact-finding body, and its jurisdiction as such must be exercised.

The case of Wieber v. England, 52 S. D. 72, 216 N. W. 850, cited by relators, construes a compensation act differing radically from the Minnesota act.

The decision of the industrial commission is affirmed. Attorney's fees of $100 are allowed the respondent.

Order affirmed.