OSCAR W. SEGERSTROM AND OTHERS v. NELSON, MULLEN
& NELSON, INC. AND ANOTHER.
NAN DAHL AND ANOTHER, RELATORS.[1]

November 20, 1936.

No. 30,929.

*Gleason & Ward* and *R. J. Orff,* for relator Nan Dahl.
*Austin L. Grimes,* for relator Clara Batters.
*Charles H. Weyl,* for respondents.

HILTON, JUSTICE.

*Certiorari* to review an order of the industrial commission setting aside findings of its referee that relators were partial dependents of one Erickson, killed in the course of his duties while employed by Nelson, Mullen & Nelson, Inc., who with their insurer are the respondents here, and reversing the referee's award of compensation to relators.

Elmer Erickson, the deceased workman, and Oscar Segerstrom were brothers. Nan Dahl was their sister, and Clara Batters was a half sister of the latter two and a full sister of Erickson. Segerstrom was denied compensation by the referee, and there was no

[1]Reported in 269 N. W. 641.

appeal by him. Nan Dahl and Clara Batters, relators here, were each granted a small weekly compensation by the referee. That award was disallowed by the industrial commission.

The youngest of the above named parties was 35 years of age. The family had become separated early in their childhood. No attempt had been made to keep in touch with each other. In October, 1931, Erickson met Nan Dahl. Prior to that time she had been working, for several years, for a retail drug concern which she quit just before meeting Erickson. From then on until April, 1933, she saw him two or three times a week. Apparently he was generous toward her in the buying of clothes, food, and minor luxuries. Except for two and one-half years when he worked for another employer, Erickson had worked for the respondent employer for many years. From 1932 on, however, his work was very irregular. In 1931 he left with his landlady, a Mrs. Gaarder, pay checks totaling $2,200, which she kept for him and gave him therefrom whenever he wished. It was from this money that he aided Nan Dahl.

Clara Batters ascertained the whereabouts of Erickson in 1929, but they did not meet until the summer of 1931, when both he and Nan Dahl went to Clara's home in Little Falls. They visited for four or five days and again at Christmas of that year. Clara Batters testified that Erickson also gave her several small amounts of money, paid a hospital bill for her, made her the beneficiary of his bonus certificate, and helped buy groceries during a four-month period that he stayed at her home.

Relators' claim as partial dependents is based upon their assertion that Erickson contributed regularly to their support for a reasonable period of time prior to his death. From April, 1933, until December of that year there is no claim that he contributed anything. Nan Dahl testified that she went to Detroit, Michigan, in 1934 and that each month up until the time he was killed Erickson sent her currency in amounts varying from $15 to $25. Clara Batters testified that commencing in December, 1933, he regularly sent her each month currency in the amount of five to six dollars up until the time of his death.

It was established that Erickson had, by April, 1933, withdrawn all of the $2,200. Subsequent thereto he had no steady employ-

ment. It is significant that from then on neither of the relators ever saw him again. Strange, too, is the circumstance that there are no claimed regular contributions from the time the parties first met in 1931 until December, 1933. There was no change of conditions at this latter date. The commission expressly found that Erickson did not work from 1931, the time when he left the large sum of money with his landlady, until October, 1933. There is support for this finding. Segerstrom testified that the only work Erickson had done in recent years was for the respondent employer; that he had not worked for anyone else. The records of the employer show that he did not work for them during the period above mentioned. Its records further showed that he worked only the months of October, November, and December in 1933; that during 1934 he worked the months of April, May, August, September, and October and then did not work until January, 1935, at which time he had worked only a few weeks before he was killed. There was no evidence at all of any other source of income from which Erickson might have made the claimed payments to relators, whereas the evidence does indicate that he had exhausted his savings and $426 he received from his bonus certificate. These facts are sufficient to support the finding that Erickson had no means with which to make the donations to relators from December, 1933, on.

Nan Dahl testified that Erickson paid her way to Detroit, Michigan, in July, 1934, and each month sent her, while she was there, as much as $25. During many of those months he was unemployed. She also testified positively that Erickson was employed by the respondent employer during the summer of 1933 and that during such time she received monthly contributions from him. The records of the employer show that Erickson did not work for them at all during that time. Relators argue that even if Nan Dahl intentionally testified falsely in that regard the rest of her testimony cannot be disregarded for the reason that the fact is immaterial. It is claimed that the only material fact is whether Erickson actually made contributions—not as to the source from which he got the money to make such payments. It does not so appear to us. It is important that it be shown that he had some means to make those

claimed payments. It is one of the surrounding circumstances in a case such as this. The commission had no other method by which to determine whether Erickson actually had contributed to the support of the relators. It was its right and duty to inquire into all the facts upon which the alleged dependency was based. It could assume that Nan Dahl knowingly testified falsely as to a very material matter.

Another unusual circumstance which throws doubt on the claim of relators is the fact that although they both testified that Erickson wrote each of them at least once a month, in which letters he inclosed varying amounts of currency, only one letter was saved, and it was not offered in evidence. As to the letters, Clara Batters testified: "I house-cleaned and there's only one there, and there isn't any mention of any money in it." It would seem that if such letters were received as claimed, at least one would be found which contained some reference to Erickson's charitableness. Nan Dahl had none from the many she purportedly received. The commission had a right to take these factors into account in arriving at its decision.

Summarizing, it appears that in view of the fact that neither of the relators ever saw Erickson after he had exhausted his $2,200; that one of them was wrong in her testimony as to his employment; that both of them claimed to have received regular monthly contributions at a time when he was unemployed; that there were many letters allegedly received by each of them from Erickson which contained money, yet only one was still in existence and it made no reference to money; and the fact that both relators were vague as to the amounts received, the decision of the commission cannot be held to be unjustified.

The industrial commission is a fact-finding body. Olson v. Carlton, 178 Minn. 34, 225 N. W. 921. Under the rule of *falsus in uno,* no credence need be given to the testimony of a witness who knowingly testifies falsely as to a material fact. Schuek v. Hagar, 24 Minn. 339; Greenfield v. Unique Theatre Co. 146 Minn. 17, 177 N. W. 666. Considering these things, it must be held that the decision below is reasonably supported by the evidence. See Maher v.

Duluth Yellow Cab Co. 172 Minn. 439, 215 N. W. 678; Reinhard v. Universal Film Exch. Inc. 197 Minn. 371, 267 N. W. 223.

Assuming all the testimony of Nan Dahl and Clara Batters to be true, it is doubtful if even then they could prevail. Whatever payments they may have received obviously were gifts. There was nothing to indicate that relators had any understanding that Erickson intended to continue his contributions or that they would be regularly forthcoming. He was under no legal obligation so to do. The payments were not uniform and apparently not greatly relied upon. The receipt of any definite amount could not be anticipated. Any payments that were made were more for the luxury and pleasure of the recipients rather than for their support. Under those circumstances it would be difficult to find that relators were dependents. See Bartkey v. Sanitary Farm Dairies, 170 Minn. 159, 212 N. W. 175; Krivich v. Butler Brothers, 177 Minn. 332, 225 N. W. 117.

The decision of the commission was unanimous, Commissioner Debel writing a persuasive memorandum in which it was pointed out that, "considering the interests of the parties in the outcome, the improbabilities involved, together with a great volume of conflicting and irreconcilable testimony," it necessarily followed that the relators did not sustain, by a fair preponderance of the evidence, the burden of proof resting upon them. In that view we agree.

Affirmed.

STONE, JUSTICE (concurring).

I concur in the result.