## ELMER RASMUSSEN v. CITY OF ST. PAUL.[1]

June 18, 1943.

No. 33,517.

*Harry W. Oehler,* Corporation Counsel, and *Francis M. Smith,* Assistant Corporation Counsel, for relator.

*Peter E. Kamuchey,* for respondent.

JULIUS J. OLSON, JUSTICE.

*Certiorari* to review an order of the industrial commission refusing to grant relator's motion to dismiss the present proceeding on the ground that the alleged cause upon which respondent's claim

[1]Reported in 10 N. W. (2d) 419.

petition is based is barred by Minn. St. 1941, § 176.18(1), (Mason St. 1927, § 4282[1]).

While employed by the city, respondent suffered an accidental injury in the course of his employment on July 24, 1935. On July 31 the city filed its report of the accident with the industrial commission and therein admitted its liability in accordance with the workmen's compensation law. The commission duly filed the report, designating it file No. 368156. A letter advising the employe of the filing of the report promptly was sent him. On September 23, Dr. S. M. Herman, acting for the city, reported that respondent was totally disabled from July 24 to September 16. On December 2 the city clerk mailed the commission a copy of an official publication which dealt at length with the Rasmussen accident, reported the sum paid him as compensation for his disability, the cost of the medical services furnished, the recovery by the city of a portion of these expenditures through its participation in a third-party settlement, and directing that this sum should be credited to the police fund and the workmen's compensation account of the general fund of the city. Later, from time to time, there were inquiries submitted by the commission to the appropriate officers of the city with respect to what was being done with the case. There was at least one telephone conversation, and many letters were written at various intervals and reports made. Thus we find that on September 13, 1939, Dr. C. C. Chatterton, who had examined respondent at the city's request, made a written report concerning his condition. Dr. Herman, likewise employed, made a report August 4 in reply to an inquiry from the commission. This, too, related to respondent's physical condition. A report was filed by Dr. A. H. Pedersen on October 19, 1939, who had also examined respondent at the request of the city. A second report was made by him on September 25, 1940. This shows that he not only examined respondent but treated him for his injury in the city's behalf.

The city has paid as compensation $243.80 and has incurred doctor and medical expenses amounting to $113.30. Thus matters drifted along without finality until June 19, 1942, when the present

claim petition was filed. Therein respondent states the recited facts and much more. He states that he was "assured" by the city's officers from time to time "that as soon as the amount of his disability was definitely determined" by the city's doctors "to whom said employe was referred from time to time by said employer, that the employer would then pay him such additional compensation as he would be entitled to under the provisions of the workmen's compensation law." In addition, he averred that the city offered to pay him $600 as compensation for permanent partial disability of his left knee, provided he would sign a full release for his entire claim. This respondent refused to do. Then for the first time the city's attorney advised him that the case "was outlawed."

The city appeared generally by answering the petition, pleading various reasons why it should not pay any additional sums, among them that respondent "is of a malingering disposition; that prior to said accident for which the employe now seeks an award, he had taken all or practically all of his cumulative sick leave permitted him under the charter and ordinances of the city of Saint Paul from the beginning of his employment." Respondent in his reply denied generally all new matter pleaded in the answer.

The commission ordered a hearing on respondent's claim before a referee for the purpose of permitting him to offer evidence to substantiate his allegations. The attorney for the city objected to "the jurisdiction of this commission and of the * * * referee," objected to a trial of the cause on its merits, and moved to dismiss the cause on the ground that the claim was barred by the cited statute. So the sole question here is whether, as a matter of law, the commission was required to hold that respondent's cause is barred.

■ Counsel for the parties agree that once the industrial commission has acquired jurisdiction by the filing of a claim petition or the occurrence of any other act constituting a "proceeding," its jurisdiction attaches and continues until it is cut off by judgment or *certiorari*. Minn. St. 1941, §§ 176.18, 176.60, 176.34 (Mason St. 1927, §§ 4282, 4319, and *Id*. 1940 Supp. § 4295) ; Glassman v. Radtke,

177 Minn. 555, 225 N. W. 889; Nyberg v. Little Falls Black Granite Co. 192 Minn. 404, 256 N. W. 732.

■ Minn. St. 1941, § 176.18(1), to which relator refers and upon which it relies, provides:

"The time within which the following acts shall be performed shall be limited to the following periods, respectively:

"(1) Actions or proceedings by an injured employee to determine or recover compensation, two years after the employer has made written report of the injury to the industrial commission but not to exceed six years from the date of the accident."

That no formal claim petition was filed with the commission within either the two- or six-year periods is conceded. The question therefore resolves itself into this: Was anything done in this case which amounted to a "proceeding" within the meaning of the statute and our decisions? Relator thinks that our holdings in Lunzer v. W. F. Buth & Co. 195 Minn. 29, 261 N. W. 477; Pease v. Minnesota Steel Co. 196 Minn. 552, 265 N. W. 427, 266 N. W. 854; and Mattson v. Oliver I. Min. Co. 201 Minn. 35, 275 N. W. 403, are conclusive against the action of the commission in holding against it on its motion to dismiss the proceeding because respondent's claim is "outlawed."

That the commission carefully considered and gave due weight to relator's cited cases is apparent from its opinion. However, it was of the view that the Nyberg case, 192 Minn. 404, 406, 256 N. W. 732, 733, was authority for its conclusion that the commission obtained jurisdiction within the two-year limitation and that this jurisdiction is a continuing one. It quotes from that opinion as follows:

"Where, as in this case, in its inception, there was apparently no controversy as to liability and payments were made and receipts filed, it was nevertheless the duty of the commission definitely to supervise the payment of compensation and to see that the employe's rights were fully protected." And further: "In effect the commission has full charge and control of the transaction, and in our

opinion the adjustment of compensation, under the supervision of the commission, amounts to a proceeding within the purview of § 4319."

Relator, however, argued before the commission, as it does here, that the holding in that case is inapplicable here because in this case the city did not file a receipt for payments made to the employe for the time lost as a result of the admitted accident. To justify its failure so to file such receipt it claimed that for the time lost by respondent he was compensated under § 52 of the St. Paul city charter. In respect to that claim, the commission was of the view, and so held, that municipalities may not—

"disregard the provisions of section 4295, Mason's St. 1927, which provides that 'In addition to the filing of the reports required by law, all employers subject to the act shall promptly file or cause to be filed with the Industrial Commission all current, interim and final receipts for the payment of compensation made.'

"We accepted the city clerk's tender of a copy of an official publication by the city setting forth the facts in the Rasmussen accident as to the duration of disability, amount of compensation paid and the cost of medical services furnished. It is true no receipt was filed on a form prescribed by the commission. However, even if the contention of the city's counsel is correct that the official document transmitted by the city clerk cannot be considered as a receipt, the failure of an employer to perform any of the obligations imposed by the compensation law cannot prejudice any of the rights of the employe."

The question before us does not go to the merits of the controversy. Our decision necessarily must be limited to the one question of whether it appears from the record that the commission was wrong in reaching the conclusion that there was here a "proceeding" pending before it and that, as such, its jurisdiction had attached and still continues.

Admittedly, there were before the commission facts showing that the city furnished respondent medical care and treatment; that it

paid him certain sums by reason of its liability under the compensation act; that respondent at the city's request submitted himself to frequent medical examinations by the city's doctors and that he did so for the purpose of treatment as well as for determination of the extent of his disability; that the city promised to pay additional compensation when and as that determination had been made; and that it never filed a notice of discontinuance and never advised respondent that it intended to deny further payments if and when the extent of disability had been determined by its own doctors. Furthermore, the resolution of the council in respect to the third-party settlement furnished the commission a factual report as complete as the formal receipt filed in the Nyberg case. We should look to substance rather than a mere name or label given to what appears to be "the official document transmitted by the city clerk" and filed with the commission while admittedly the matter was there alive and pending.

We cannot believe that a municipality, any more than a private employer, can under such circumstances escape the liability imposed by the compensation law.

Respondent is allowed $100 attorney's fees in this court, plus his statutory costs and taxable disbursements.

Writ discharged and order affirmed.