# ERICK LAPPINEN v. UNION ORE COMPANY AND ANOTHER.[1]

July 25, 1947.

No. 34,299.

[1]Reported in 29 N. W. (2d) 8.

*W. O. Bissonett,* for relators.

*Royal G. Bouschor* and *Louisell & Louisell,* for respondent.

PETERSON, JUSTICE.

Certiorari to the industrial commission to review an award of further compensation for permanent partial disability resulting from an injury for which compensation for temporary total disability had been paid and a final receipt given and filed with the commission.

The questions for decision are: (1) Whether, where eight days after an employe sustained an accidental injury the employer filed with the commission a written report of the accident and about two months after the accident occurred the employer filed with the commission a final receipt for compensation paid to the employe for temporary total disability caused by the injury, a proceeding commenced about 11 years after the filing of the receipt to recover further compensation for permanent partial disability caused by the injury is barred by § 176.18(1), requiring a proceeding by an employe to recover compensation to be brought within two years after the employer has made written report of the injury to the commission and not more than six years after the date of the accident; (2) whether the commission was justified in awarding compensation for permanent partial disability of the employe's left arm as a whole, where the proceeding is brought to recover compensation for per-

manent partial loss of use of the left hand including wrist movement, and there was no evidence taken at the hearing before the referee as to the nature and extent of the injury, except the reports of two physicians which the parties stipulated would be used for the purpose of "deciding" employe's disability, one of which showed that the disability was limited to the left hand and wrist movement and the other that it was limited to the left hand and lower forearm, but employe, as part of his testimony received for the purpose of giving a brief history of the injury, gave a demonstration before the referee of his hand and arm movements, the details of which are not shown in the record; (3) whether interest should be allowed upon compensation awarded where employe did not proceed to recover it for approximately 11 years after the execution and filing of the final receipt; and (4) whether the employer is liable for a penalty under § 176.31, subd. 2, for interposing a frivolous defense presenting no real controversy, where he prevails in this court.

The facts giving rise to these questions are that on May 8, 1934, the employe, while employed as a mining foreman, sustained a fracture of the upper third of his left arm between the wrist and the elbow; that he received hospital and medical treatment for his injuries; that he was disabled until June 24, 1934, a period of six weeks and four days; that the employer paid him $134.56 compensation; that he then returned to his work as a mining foreman; and that on July 6, 1934, he executed a final receipt on a form prepared by the commission. The employer filed with the commission on May 16, 1934, a report of the accident, and on July 9, 1934, it filed the final receipt and a certificate by a physician concerning employe's injuries. The final receipt was processed by the commission. There was correspondence between employe and the commission and an examination of employe by a neutral physician, who found that there was a good union of the fracture; that employe had a useful left arm; and that there was no limitation of either elbow or wrist movement. Thereupon, the commission notified the

employe that the report filed on July 9, 1934, to the effect that there was no permanent disability, "apparently is confirmed."

In the report of the accident and the physician's certificate filed with the final receipt, the injury in question was described as a fracture of the upper third of the left forearm (the radius). In the claim petition for further compensation for permanent partial disability, the injury is so described and the disability as "30 percent loss of use of left hand including wrist movements."

The case was heard by a referee. No oral medical testimony was taken. In lieu thereof, the parties stipulated that medical reports prepared by their respective physicians, Dr. J. Arnold Malmstrom for the employe and Dr. Robert L. Bowen for the employer, "will be used for the cause [purpose] of deciding what medical disability, if any, the employe has." The reports were substantially the same, except as to the extent of the resulting disability. Dr. Malmstrom reported that employe complained of pain in the neck, shoulder, and elbow regions radiating down into the hand; that he had a fracture of the left radius; that he had a slightly smaller than normal measurement of the muscle in the upper left arm; that his shoulder and elbow movements were normal; and that he had a definite bowing of the left forearm. His conclusion was that employe sustained a "possible loss" of approximately 35 to 40 percent of the use of the left hand and 10 to 15 percent loss of use of the lower left forearm, or a total permanent loss of use of both of approximately 25 to 30 percent. Dr. Bowen found that employe had sustained some loss of grip (of the hand) and limitation of motion of the left forearm and estimated "the disability at approximately 25 percent of the hand and wrist." There was no evidence showing disability to the left arm as a whole.

At the hearing before the referee, employe was permitted to testify, over the employer's objection, for the purpose of giving a brief history of his injury as to the facts concerning the accident and his injury in which he referred to the injury as one to his left arm or arm. He was permitted to demonstrate to the referee "how much" he could move his hand, how much he could twist his arm,

and how he could raise his hand to his head. These movements were accompanied by such remarks as "I can do that much, see," "that much," and "like that"; but the record contains no other statement of what the demonstration showed.

The position taken in the dissenting opinion by Mr. Justice Thomas Gallagher that the question whether employe's whole arm was injured was litigated by consent is untenable. When employe in answering a question was about to state facts concerning his injuries, the following occurred:

"By Mr. Gillette: The injury is admitted here.

"By Mr. Bouschor: We'll just let him give a *brief history of the injury*." (Italics supplied.)

It is plain that Mr. Gillette intended to object to Mr. Bouschor's going into any matters covered by the stipulation; that Mr. Bouschor not only so understood, but realized that Mr. Gillette's intended objection was a valid one; and that, to obviate further objection, Mr. Bouschor by his statement that he intended only to elicit *a brief history of the injury* not only intended to assure Mr. Gillette that he did not intend to offer any evidence subject to the latter's objection, but that any evidence that might be given would be entirely consistent with the stipulation and not subject to the objection.

The referee found that employe had sustained a 25 percent permanent and partial disability of the *left arm,* and concluded "that the employer herein shall pay 50 weeks of compensation at $20.00 a week—being the sum of $1,000.00 by reason of a 25% permanent and partial disability of the *left arm,* together with interest to March 1, 1946 in a sum of $674.42 and further interest for the period following March 1, 1946, until all compensation due in this matter has been fully paid." (Italics supplied.) The employer appealed to the commission from the referee's decision on questions of law and fact. The case was heard by the commission upon the record made before the referee. No reference was made in the commission's decision to employe's demonstration of his injuries at the hearing before the referee. Adopting the reports of the physicians introduced by stipulation of the parties as a basis for determining the nature and

extent of permanent partial disability, the commission affirmed the referee's decision both as to his findings concerning the nature and extent of the disability and the allowance of interest.

■ Under § 176.18(1), a proceeding by an employe or his dependents to recover compensation is barred, unless commenced within two years after the employer has filed with the commission a written report of the accident and within six years after the date of the accident. Our decisions hold that the workmen's compensation act contemplates that there shall be only one proceeding by an employe or his dependents to recover compensation; that the proceeding must be commenced within the time limited by the statute; that at any time before certiorari to review the award has been issued by this court or the award has been reduced to judgment the commission may under § 176.60 set aside an "award" for cause and grant a new hearing; that the filing with the commission of a final receipt showing voluntary payment in full of compensation by the employer constitutes a *proceeding* to have the commission determine whether the settlement evidenced by the final receipt conforms to the act; that, where the commission does not disapprove the settlement and payment, the transaction is equivalent to an express *award* by the commission discharged by payment in full; that the commission for cause may set aside such a settlement and grant a new hearing in the exercise of its power so to do in the case of an *award*—only an "award," not some other sort of transaction, may be set aside under the statute; that the commission's jurisdiction of a proceeding to recover compensation and of any award made by it continues as long as there is any liability for compensation; that a proceeding to recover further compensation in cases where there has been an express award or the filing of a final receipt after voluntary payment constitutes a reopening and continuation of the original proceeding; and that the time limited in § 176.18(1) for bringing a proceeding to recover compensation refers to the original proceeding and not to a subsequent one reopening and continuing the original proceeding for the purpose of recovering further compensation. Rasmussen v. City of St. Paul, 215 Minn. 458, 10 N. W. (2d) 419; Nyberg v. Little

Falls Black Granite Co. 192 Minn. 404, 256 N. W. 732; Kummer v. Mutual Auto Co. 185 Minn. 515, 241 N. W. 681.[2] The filing of a report of the accident or some paper other than a final receipt after voluntary payment of compensation does not constitute the institution of a proceeding. Rasmussen v. City of St. Paul, *supra.* The cases of Mattson v. Oliver I. Min. Co. 201 Minn. 35, 275 N. W. 403; Pease v. Minnesota Steel Co. 196 Minn. 552, 265 N. W. 427, 266 N. W. 854; and Lunzer v. W. F. Buth & Co. 195 Minn. 29, 261 N. W. 477, relied on by relator, and Mohrlant v. Lampland Lbr. Co. 222 Minn. 58, 23 N. W. (2d) 172, involved the filing of a report of accident or some paper other than a final receipt, and for that reason they are not in point. Here, because the final receipt was filed approximately two months after the accident, the original proceeding was commenced within the time limited by the statute. The instant proceeding to recover further compensation for permanent partial disability, although commenced about 11 years after the filing of the final receipt, constituted a reopening or continuation of the original proceeding. Because the bar of the statute is inapplicable to a proceeding to reopen and continue an original proceeding, the instant proceeding was not barred. Because the obligation of the employer to pay compensation continued, it was permissible to reopen and continue the original proceeding to enforce that obligation.

■ The dispute as to whether the employe was entitled to compensation for disability of the whole arm or of the hand and wrist movement or the hand and lower forearm is to be determined by the application of the statute to the facts of the case. The compensation act contains a schedule of specific injuries for which it provides specific awards of compensation. Section 176.11, subd. 3 (41), provides that in case of permanent partial disability due to injury to a member, not otherwise compensated in the schedule, compensation shall be paid at the prescribed rate during that part of the time

[2]Gustafson v. Ziesmer & Vorlander, Inc. 213 Minn. 253, 6 N. W. (2d) 452; Johnson v. Pillsbury Flour Mills Co. 203 Minn. 347, 281 N. W. 290; Tuomi v. General Logging Co. 196 Minn. 617, 265 N. W. 837; Hawkinson v. Mirau, 196 Minn. 120, 264 N. W. 438, 265 N. W. 346. See, Nyberg v. Little Falls Black Granite Co. 8 Minn. Work. Comp. Dec. 76.

specified in the schedule for the total loss of the respective member which the extent of injury to the member bears to its total loss. The schedule contained in § 176.11, subd. 3, provides for an award of 66 2/3 percent of the daily wage at time of injury as follows:

(12) For loss of a hand not including wrist movement during 150 weeks;

(13) For loss of a hand including wrist movement during 175 weeks;

(14) For loss of an arm during 200 weeks;

"(15) Amputation of the arm below the elbow is considered the loss of a hand, including wrist movement, if enough of the forearm remains to permit the use of an effective artificial member, otherwise it is considered the loss of an arm;"

The findings that employe's percentage of disability is 25 percent and that he was entitled to $20 per week are not questioned here. If the disability was limited to the hand and wrist movement or to the hand and lower forearm, he was entitled to an award of $875 compensation, and if the disability affected the whole arm he was entitled to $1,000. While the dispute as to the amount of compensation involves only $125, that is no reason why it should not be decided correctly.

Where a workmen's compensation act contains a schedule of specific injuries for which specific awards of compensation are provided, the award of compensation for a specific injury included in the schedule must be the particular one therein set forth. The schedule fixes specific compensation for specific injuries, and the commission lacks discretion to make another or different award. Sheldon v. Gopher Granite Co. 174 Minn. 551, 219 N. W. 867; Chiovitte v. Zenith Furnace Co. 148 Minn. 277, 181 N. W. 643; Western Condensing Co. v. Industrial Comm. 234 Wis. 452, 291 N. W. 339; 71 C. J., Workmen's Compensation Acts, § 547. An injury is not specific within the meaning of the schedule unless it relates solely to the injured member, and if an injury to a specific member also causes other injuries, compensation is not limited to that for the specific member, but is the compensation provided in

the act for the greater injury. Olson v. Griffin Wheel Co. 218 Minn. 48, 15 N. W. (2d) 511, 156 A. L. R. 1338; State ex rel. Albert Lea Packing Co. Inc. v. District Court, 146 Minn. 283, 178 N. W. 594; State ex rel. The Broderick Co. v. District Court, 144 Minn. 198, 174 N. W. 826. In State ex rel. Kennedy v. District Court, 129 Minn. 91, 93, 151 N. W. 530, 531, we had occasion to apply these rules in a case somewhat similar to the instant one. We there held that if the disability related to the whole arm compensation should be awarded for such disability; and that if it related only to the hand and wrist movement it should be limited to the latter, saying:

"* * * If there were no injuries except to the hand and forearm, we think the court should have awarded compensation based upon a percentage of total disability to the hand."

We held further that whether the injury was one or the other was a fact question.

It is too well settled to require citation of authority that the workmen's compensation act should be liberally construed so as to afford coverage of all cases reasonably within its purview. The provisions of § 176.54, to the effect that the commission shall not be bound by common-law or statutory rules of evidence or by technical or formal rules of procedure except as provided in the act, but that "All findings of fact shall be based *only* upon competent evidence" (italics supplied), sweep away procedural technicalities, to the end that claimants may be afforded the protection intended by the act (Matter of Ziegler v. P. Cassidy's Sons, 220 N. Y. 98, 115 N. E. 471, Ann. Cas. 1917E, 248) ; but they do not dispense with proof of the employe's claim. On the contrary, they impose upon him the imperative duty of proving his case by "competent evidence." Bliss v. Swift & Co. 189 Minn. 210, 248 N. W. 754; Manley v. Harvey Lbr. Co. 175 Minn. 489, 221 N. W. 913.[3] To hold otherwise would amount to taking money from one person and giving it to another without

[3] A. C. Lawrence Leather Co. v. Barnhill, 249 Ky. 437, 61 S. W. (2d) 1; Nash v. Solvay Process Co. (La. App.) 189 So. 493; D'Amico v. Conguista, 24 Wash. (2d) 674, 167 P. (2d) 157.

any legal basis for so doing. Matter of Hansen v. Turner Const. Co. 224 N. Y. 331, 120 N. E. 693.

■ While an employe is required to prove his claim by competent evidence, an affirmative duty rests upon the commission to see to it that an award or settlement conforms to the act by affording to the employe the maximum coverage intended to be given him by the act. In so doing, the commission may by disregarding procedural technicalities adapt the relief to the facts of the particular case, but it must always act fairly and judicially. Where a claim is litigated upon a claimed set of facts and the proofs fail to establish those facts, with the consequence that the employe would not be entitled to compensation under his theory of the case, but the proofs do establish a different situation entitling the employe to compensation or to greater compensation than that claimed by him, it is the duty of the commission to order litigation of the issues arising from the facts thus developed at the hearing and, where necessary, to order a continuance in order to afford the parties opportunity to prepare for such litigation, and, if the proofs should sustain a recovery or a greater one than claimed, to make an award accordingly. For example, in Kallgren v. C. W. Lunquist Co. 172 Minn. 489, 493, 216 N. W. 241, 242, where the claim was based upon disability caused by sunstroke and the proofs failed to sustain such claim, but did show disability resulting from apoplexy caused by the lifting of a heavy beam by the employe, who was then suffering from arteriosclerosis and high blood pressure, we reversed the decision of the commission denying an award of compensation and remanded the case for the purpose of having the commission determine whether the facts would sustain an award on the last-mentioned ground, with directions "to make a definite finding thereon from the record and such additional evidence as each of the parties may wish to offer in reference thereto." So here, if there was a basis for an award of compensation for disability of the arm as a whole, it was the duty of the commission to make such an award, but it could not do so where, as here, the litigation had proceeded upon the unquestioned supposition that the disability was to the hand and wrist

movement, or to the hand and lower forearm, without affording the employer opportunity to meet the issue whether the disability was in fact one affecting the whole arm.

■ The commission is the finder of the facts in all cases coming before it on appeal from a referee's decision, regardless of whether the appeal is heard upon the record made before the referee or upon such record and additional evidence taken by the commission. Nelson v. Creamery Package Mfg. Co. 215 Minn. 25, 9 N. W. (2d) 320; Barlau v. Minneapolis-Moline P. I. Co. 214 Minn. 564, 9 N. W. (2d) 6; Segerstrom v. Nelson, Mullen & Nelson, Inc. 198 Minn. 298, 269 N. W. 641; Olson v. Carlton, 178 Minn. 34, 225 N. W. 921; Hogan v. Twin City Amusement Trust Estate, 155 Minn. 199, 193 N. W. 122. Here, as has been mentioned, the commission found the facts upon the record made before the referee without taking additional evidence.

■ On this record, a finding of disability of the whole arm rather than of the hand and wrist movement or of the hand and lower forearm was not permissible, for the reasons (a) that the evidence to be considered under the stipulation showed disability only of the hand and wrist movement or of the hand and forearm; and (b) that the record fails to disclose any disability to the arm as a whole.

(a) When at the opening of the hearing before the referee the parties "agreed" that the statements of the doctors "will be used for the cause [purpose] of deciding what medical disability, if any, the employe has," they in effect stipulated that the statements constituted the evidence to be considered in determining the nature and' extent of the employe's disability. Holmberg v. Southern Minnesota J. S. L. Bank (D. C.) 10 F. Supp. 795 (Nordbye, J.), (appraiser's figures received to show value of lands); Flanagan v. Charles E. Green & Son, 121 N. J. L. 327, 329, 2 A. (2d) 180, 181 (a signed statement by an injured employe, which it was stipulated "both parties are submitting * * * to your honor to pass upon the factual question" whether an accidental injury arose out of and in the course of the employe's employment); Lowell Co-op. Bank v. Sheridan, 284 Mass. 594, 598, 186 N. E. 636, 638, 91 A. L. R. 1176 (stipula-

tion that plaintiff's treasurer, if produced as a witness, would testify to all facts alleged in the bill not admitted by the answer, held "in substance an agreement as to the evidence to be considered by the court").

The parties may stipulate as to what evidence shall be considered by the trier of fact. G. N. Ry. Co. v. Becher-Barrett-Lockerby Co. 200 Minn. 258, 274 N. W. 522; Shaw v. Henderson, 7 Minn. 386 (480) ; Holmberg v. Southern Minnesota J. S. L. Bank and Flanagan v. Charles E. Green & Son, *supra;* Frati v. Jannini, 226 Mass. 430, 115 N. E. 746. Courts encourage the use of stipulations concerning matters of procedure and proof, because they facilitate litigation by lessening labor and expense. Amundson v. Cloverleaf Memorial Park Assn. 221 Minn. 353, 22 N. W. (2d) 170; National Council v. Scheiber, 141 Minn. 41, 169 N. W. 272.

A stipulation as to what evidence shall be considered by the trier of fact in deciding a particular question excludes the consideration of other evidence. Shaw v. Henderson and Holmberg v. Southern Minnesota J. S. L. Bank, *supra.* The plain purpose of such a stipulation is to state the evidence without producing it in the ordinary way. Where there is no intention to circumscribe the trier of fact, the common practice is simply to read the stipulated evidence into the record. But where, in addition, as here, the parties agree that the stipulated evidence is to be used for the purpose of *deciding* a particular issue of fact, an intention is manifested that the decision shall be based exclusively upon the stipulated evidence. Otherwise, the stipulated evidence would not be used for such purpose. Unless stipulations are enforced, they are apt to prove a trap for even the most wary and circumspect, and that is precisely what would be the effect of the stipulation here if the commission could disregard it in deciding the question of the nature and extent of employe's disability.

As long as a stipulation remains in effect it is binding not only on the parties, but on both the trial and appellate courts. Amundson v. Cloverleaf Memorial Park Assn. and Shaw v. Henderson, *supra;* Bingham v. Board of Supervisors, 6 Minn. 82 (136) ; H. Hack-

feld & Co. v. United States, 197 U. S. 442, 25 S. Ct. 456, 49 L. ed. 826; City of Chicago v. Drexel, 141 Ill. 89, 30 N. E. 774; Lewis v. Lambros, 58 Mont. 555, 194 P. 152. Because such a stipulation excludes consideration of other evidence, other evidence may not be considered, even though it may find its way into the record, except where it clearly appears that the parties have abandoned the stipulation. Shaw v. Henderson, *supra;* Paige v. Willet, 38 N. Y. 28. Likewise, the stipulation may not be contradicted by other evidence. City of Chicago v. Drexel, *supra;* LeBarron v. Harvard, 129 Neb. 460, 262 N. W. 26, 100 A. L. R. 767.

The rules governing stipulations apply in workmen's compensation cases the same as in others. Worwa v. Minneapolis St. Ry. Co. 192 Minn. 77, 255 N. W. 250. A stipulation, as long as it is recognized as being in effect, is binding on the parties and on the commission. Schreiber v. Rickert, 114 Ind. App. 55, 50 N. E. (2d) 879; General Const. Co. v. Industrial Comm. 314 Ill. 58, 145 N. E. 90; Montgomery Ward & Co. v. Industrial Comm. 304 Ill. 576, 136 N. E. 796; Midwest Rig Bldg. Co. v. Bradshaw, 184 Okl. 479, 88 P. (2d) 340; Western Condensing Co. v. Industrial Comm. 234 Wis. 452, 291 N. W. 339, *supra.*

True, the commission may for cause set aside a stipulation. Worwa v. Minneapolis St. Ry. Co. *supra.* In certain cases it is the duty of the commission to do so, as where it appears that the effect of the stipulation is to deprive the employe of compensation to which he is entitled under the act. While the commission has undoubted power to reject a stipulation of the parties, that fact does not affect the rule that a stipulation is binding until set aside. Princeton Min. Co. v. Earley, 114 Ind. App. 343, 51 N. E. (2d) 382. Where the commission decides to disregard a stipulation, it should expressly set it aside, make that fact known to the parties, and adapt its procedure to the change in the situation created by its setting aside of the stipulation, to the end that the litigation may proceed in the light of the changed situation and that the parties may be afforded an opportunity to meet new issues, if any, created by the change. Frankfort General Ins. Co. v. Pillsbury, 173 Cal. 56, 159 P. 150.

In Princeton Min. Co. v. Earley, *supra,* where the commission followed the procedure mentioned, the court in ,pointing out the correct procedure said (114 Ind. App. 346, 51 N. E. [2d] 383) :

"The.authority to reject the whole of an agreement must logically include the authority to reject a part [a stipulation as to fact]. * * * This does not affect the rule that a stipulation is binding unless withdrawn or set aside. Of course the board cannot permit a stipulation to stand and then find contrary to it. By permitting it to stand the board in effect approves it. If it is to be rejected the parties are entitled to know it and to have an opportunity to marshall their evidence on the point."

Consequently, the stipulation here was binding on the parties and on the commission. The commission did not reject it or set it aside. In affirming the referee's decision, the commission bottomed its decision on the stipulation, thereby showing that it deemed the stipulation to be in effect. But it misconstrued the effect of the stipulation. While the evidence to be considered under the stipulation in determining the nature and extent of the disability showed, according to one doctor, a 25 to 30 percent disability of the hand and lower forearm and according to the other approximately 25 percent disability of the hand and wrist movement, the commission found a 25 percent disability of the whole arm. Thereby, it found disability in excess of that for which there was any basis in the evidence which it was entitled to consider. Cases like Kruchowski v. Swift & Co. 201 Minn. 557, 277 N. W. 15, and Gurtin v. Overland-Knight Co. 179 Minn. 38, 228 N. W. 169, where we held that the commission was not bound by medical testimony in determining the extent of disability, are not in point, because in those cases there was evidence other than that of the medical testimony to sustain the finding. Here there is none. The stipulation binds the commission to consider only the evidence which shows a disability of the hand and wrist movement or the hand and lower forearm. It cannot predicate a finding on conjecture. Susnik v. Oliver I. Min. Co. 205 Minn. 325, 286 N. W. 249.

It does not appear that either the commission or the referee intended to set aside the stipulation, but the fact is that their decisions entirely ignored the legal effect of it. If the intention was to set aside the stipulation, it should have been done by express order. If the commission was of the view that the employe might be entitled to compensation for disability of the whole arm, it should have so informed the parties and permitted them to litigate the issue as to whether that was the fact. It could not decide the issue without affording the parties such opportunity.

(b) Aside from any effect the stipulation might have in circumscribing the commission's power to find the facts as to the nature and extent of employe's disability,[4] employe's demonstration of his injuries before the referee was not part of the record and therefore could not be considered by the commission. As has been pointed out, the commission made its own findings upon the record made before the referee without taking additional evidence. The commission did not see the demonstration. It had no better opportunity than we have of knowing of what the demonstration consisted or what it disclosed. See, Rikstad v. Dept. of Labor and Industries, 180 Wash. 591, 41 P. (2d) 391. The alleged demonstration should not have been considered by the commission, because it was not part of the record. It plainly was the intention of the workmen's compensation act that all evidence considered by the commission in finding the facts should be included in the record, not only for the purpose of enabling parties properly to litigate fact questions before the commission, but also that there might be judicial review of the commission's decisions with respect to such questions. Matter of Carroll v. Knickerbocker Ice Co. 218 N. Y. 435, 113 N. E. 507, Ann. Cas. 1918B, 540; Spencer v. Industrial Comm. 81 Utah 511, 20 P. (2d) 618; Id. 87 Utah 336, 358, 40 P. (2d) 188, 48 P. (2d) 1120; Sharp v. Bowen, 87 Utah 327, 48 P. (2d) 905. Personal

[4]Where there is a stipulation as to the facts, no presumption will be made on appeal as to the existence of facts necessary to support the findings. Westmoreland v. Birmingham T. & S. Bank, 214 Ala. 593, 108 So. 536, 46 A. L. R. 1201; Shaughnessy v. Isenberg, 213 Mass. 159, 99 N. E. 975; 3 Am. Jur., Appeal and Error, § 937, note 17.

knowledge acquired by members of the commission or one of its members by inspection in the course of a hearing or otherwise not made part of the record must be excluded. Matter of Schemerhorn v. General Elec. Co. 195 App. Div. 670, 186 N. Y. S. 835 (holding that information acquired by a deputy commissioner in the course of a hearing by examining an injured employe, not made part of the record, could not be considered in determining the extent of a hand injury).

The commission's finding of the facts on appeal upon the record made before the referee is analogous in this respect to findings made by the appellate court under the old chancery practice where the case was tried *de novo* upon the record. In such cases, evidence not made part of the record could not be considered, even though such evidence was before the trial judge. Blease v. Garlington, 92 U. S. (Otto) 1, 23 L. ed. 521; Gallion v. M'Caslin, 1 Blackf. (Ind.) (2 ed.) 103, 12 Am. D. 208. In Conn v. Penn, 18 U. S. (Wheat.) 424, 5 L. ed. 125, certain parol evidence not made part of the record was not considered by the appellate court. In the opinion by Mr. Chief Justice Marshall, it was held that all the evidence considered by the trial court should be brought into the record and that evidence heard by the trial judge but not brought into the record could not be considered by the appellate court.

The rule is different on an appeal where the appellate tribunal, as the commission did here, tries and decides the case upon the record made before a trial tribunal, from what it is on a writ of error or so-called appeal which is in the nature of a writ of error. Under the former, because the appellate tribunal makes its own findings, only the record can be considered. The plaintiff has the burden of proof in the appellate court the same as in the trial tribunal. Devore v. Adams, 68 Iowa 385, 27 N. W. 267; 5 C. J. S., Appeal and Error, §§ 1529, 1531. The usual presumptions in favor of a finding of the trial tribunal do not obtain. Because the appellate court makes its own findings upon the record the same as if none had been made by the trial court, there are in fact no findings to be

bolstered by presumptions. Dier v. Dier, 141 Neb. 685, 4 N. W. (2d) 731.

Where the review is by writ of error or by an appeal governed by the same principles, the presumption is that the evidence supports the findings, even though the evidence is incompletely preserved in the record, as in the case of the demonstration here. Presumption supplies in such a case what the record fails to show. Donnelly v. Lehigh Nav. Elec. Co. 258 Pa. 580, 102 A. 219; 5 C. J. S., Appeal and Error, § 1562. No such presumption can be indulged here, for the reason that a case is removed from a referee to the commission not by writ of error, but by appeal, and the commission in performing its functions as an appellate tribunal is not governed by the principles applicable to review by writ of error. The commission's function, as has been pointed out, is not to decide whether the referee has committed error, but to decide the entire case *de novo* upon the evidence before it. So functioning, it cannot supply by presumption the existence of facts not shown by the evidence. It could not consider the alleged demonstration, because there was no evidence in the record concerning it, and the commission neither saw nor heard it.

■ Interest for approximately 11 years subsequent to the filing of the final receipt until the commencement of this proceeding to recover further compensation for the permanent partial disability should not have been allowed, for the reason that there was neither contractual obligation to pay it nor default in paying it when due. There is no pretense that there was any agreement by the employer to pay interest. The workmen's compensation act contains no provision requiring interest to be paid on compensation payments. Bourdeaux v. Gilbert Motor Co. 220 Minn. 538, 20 N. W. (2d) 393. Where interest is allowed upon workmen's compensation, it is awarded *as damages* for default consisting of failure to make payment when due the same as in other cases where there is neither an express promise to pay nor a statutory duty to do so. Bourdeaux v. Gilbert Motor Co. *supra;* Brown v. City of Pipestone, 186 Minn.

540, 245 N. W. 145. See, Royal Ind. Co. v. United States, 313 U. S. 289, 61 S. Ct. 995, 85 L. ed. 1361.

It logically follows that there can be no liability for interest where there is a liability to pay money, but no express promise to pay interest thereon, no statutory obligation to do so, and no default consisting of failure to pay the money when due. Lund v. Larsen, 222 Minn. 438, 24 N. W. (2d) 827 (agreement to pay money on a certain day, but none to pay interest thereon prior thereto) ; County of Redwood v. Winona & St. P. Land Co. 40 Minn. 512, 41 N. W. 465, 42 N. W. 473, affirmed, 159 U. S. 526, 16 S. Ct. 83, 40 L. ed. 247 (liability to pay taxes on land omitted during certain years, where there was no default) ; Sibley v. County of Pine, 31 Minn. 201, 17 N. W. 337 (money held under mistake of fact—no liability for interest prior to a demand) ; Ratner v. Hill, 270 Mass. 249, 170 N. E. 69.

Where the amount of a liability has not been ascertained, there is no liability for interest thereon prior to the time of its ascertainment. County of Redwood v. Winona & St. P. Land Co. *supra*[5]; Brainerd v. Champlain Transp. Co. 29 Vt. 154.

---

[5]Nothing can be added to the exposition of the law by Mr. Justice Mitchell in this case, which reads (40 Minn. 522, 42 N. W. 477):

"* * * To render a person chargeable with interest there must be ·a promise, express or implied, to pay it, or some default of duty on his part in not sooner paying the money. Sibley v. County of Pine, 31 Minn. 201, (17 N. W. Rep. 337.) In a case like the present there is neither. If the law required a land-owner to list his property for taxation, his failure to do so, whereby it escaped payment of the tax at the proper time, would constitute such a default of duty as would justify charging him with interest for the time during which the public was deprived of the use of the money. Or if the amount of the tax had been ascertained, so that he had an opportunity to pay it, but instead of doing so saw fit to defeat its present collection by interposing an objection on the ground of some defect or irregularity in the proceedings, and a reassessment thereby became necessary, we can see how it might be urged that he could be charged with interest during the time that the collection of the tax was postponed, for the tax-payer himself would be in a sense responsible for the delay. But where the land has been entirely omitted from the assessment-rolls the owner is not in default. He is not required to list his land. The neglect or omission is wholly that of

The employer here was not in default, because through inaction of the employe during the more than 11 years in question the employer's liability, including the amount and extent thereof, had not been established and could not have been ascertained by a computation according to any known standards. It seems rather clear that the workmen's compensation act provides for liability on the part of the employer to pay compensation beginning one week after the date of injury where the disability is for less than four weeks and from the date of injury where the disability is four weeks or longer (§ 176.14), and that the liability terminates, subject to right of review under the act and rehearing under § 176.60, when the amount awarded has been paid in full (§ 176.34). Two methods, having the same legal force and effect, are provided in § 176.34 for terminating an employer's liability for compensation, viz.: (1) The filing of a final receipt showing such payment, and (2) an order of the commission terminating the liability granted after notice and hearing in cases where the employe or his dependents refuse to execute a final receipt. The statute declares that such an order shall operate to "relieve" the employer "from any further liability for payment of compensation," subject to such right of review and rehearing. That an award and the situation created by the filing of a final receipt which has not been disapproved stand upon the same basis is evident from our decisions holding that both the award and the settlement evidenced by the filing of the final receipt may be set aside for cause and a new hearing granted. Tuomi v. General Logging Co. 196 Minn. 617, 265 N. W. 837 (an award) ; Nyberg v. Little Falls Black Granite Co. 192 Minn. 404, 256 N. W. 732, *supra* (filing of a final receipt) ; Hawkinson v. Mirau, 196 Minn. 120, 264 N. W.

the public officers. *He has never had an opportunity to pay the tax, for the amount of it has never been ascertained.* If, under such circumstances, in the absence of any default on his part, the legislature can impose interest retrospectively, there is no reason why it might not also impose certain penalties for the non-payment of the tax, for both stand, in this respect, on the same footing. Both are in the nature of damages for a default of legal duty. The only difference is that one is in its nature compensatory, while the other is punitive." (Italics supplied.)

438, 265 N. W. 346 (where there was no award and no final receipt, but compensation was voluntarily paid and a proceeding was brought to terminate liability for further payments). Setting aside an award or a settlement evidenced by a final receipt and granting a new hearing lies in the discretion of the commission, and where the commission denies an application by an employe for such relief the employer cannot be held liable for further compensation. Rehak v. St. Paul Terminal Warehouse Co. 206 Minn. 96, 288 N. W. 22. Hence, not only the further liability in any case, but the extent and amount of it, is contingent on an award being made by the commission in the exercise of its discretion to grant a rehearing.

Not only is it discretionary to set aside an award or settlement evidenced by a final receipt, but so is it as to the making of a new award upon rehearing, because it involves deciding by forming an estimate of the percentage of the disability sustained by the employe. This can be, and as a matter of practice is, done by taking evidence and considering it in substantially the same manner as is done in a personal injury case in awarding damages for physical disability sustained as a consequence of defendant's wrong. Interest is never awarded on such unliquidated liabilities. Grand Forks Lbr. Co. v. McClure Logging Co. 103 Minn. 471, 115 N. W. 406; Swanson v. Andrus, 83 Minn. 505, 86 N. W. 465. In the Swanson case we said (83 Minn. 510, 86 N. W. 467):

"* * * On the other hand, interest has not been allowed where the damages claimed were not only unliquidated, but could not be ascertained by reference to any generally recognized standard, or were, or any part of them, prospective or contingent, or the amount thereof depended in whole or in part upon the discretion of the jury."

For the same reasons, no interest should be allowed here.

The principles just stated have been applied by other courts in cases like the instant one upon the theory that a creditor is not entitled to interest where he fails to have the amount of the liability ascertained and the liability is contingent and not computable by established standards by what amounts to arithmetical opera-

tion. Bushing v. Iowa Ry. & Light Co. 208 Iowa 1010, 226 N. W. 719 (interest not allowed during delay of about ten years); Angelo v. Keystone State Const. Co. 134 Pa. Super. 255, 3 A. (2d) 946 (delay of five years). The Bushing case is particularly persuasive, because it was decided by the Iowa court, whose decision in Nester v. H. Korn Baking Co. 194 Iowa 1270, 190 N. W. 949, is the basis for our rule announced in Brown v. City of Pipestone, 186 Minn. 540, 245 N. W. 145, *supra*, and because it points out the distinction between a case where interest is allowed for the employer's default and where it is denied for lack thereof.

By providing in § 176.34 that in cases where a final receipt cannot be obtained liability for payments of compensation may be terminated by the procedure therein provided, the legislature gave full recognition to and in effect adopted the rules applicable to liability for interest as against a party holding a receipt evidencing payment in full. While a receipt showing full payment is never conclusive upon the question of further liability, it does operate to relieve the holder from further liability and from interest thereon until proceedings to establish such liability have been commenced. Because the statute intends a final receipt in a workmen's compensation case to stand on the same basis as other final receipts, the rule applicable to the latter should apply to the former. The rule is illustrated by cases involving liability of a party for interest upon money retained under mistake in reliance upon a receipt. The party retaining the money may rely upon a receipt or other acquittance and does not become liable for interest until demand is made for payment of the money thus retained. Washington Ry. & Elec. Co. v. Washington, B. & A. Elec. R. Co. 59 App. D. C. 15, 32 F. (2d) 406; Second and Third St. Passenger Ry. Co. v. Philadelphia, 51 Pa. 465 (cited with approval in Sibley v. County of Pine, 31 Minn. 201, 17 N. W. 337).

In the Second and Third St. Passenger Ry. Co. case, the company failed to pay in full certain taxes because of a misunderstanding of the true basis of assessment. The city treasurer gave a receipt in full for the taxes. The company was held not liable for interest upon

the amount of taxes which by mistake it omitted to pay. The court said (51 Pa. 468):

"The rule seems therefore to be this, that when a mutual mistake occurs between the payer and receiver of a sum of money, by which the whole has not been paid, or too much has been received, interest is not recoverable on the sum so withheld or received, unless it has been unjustly withheld or unjustly received. The party retaining the money by mistake, may well rely on the acquittance received or given, until the injured party makes known his claim and demands correction and payment. After such demand, if it be refused, and it turns out that there was money due which ought to have been paid, it will bear interest from demand until paid."

So it is here.

The case of Bourdeaux v. Gilbert Motor Co. 220 Minn. 538, 20 N. W. (2d) 393, is not in point here on the question of liability for interest, because in that case, as we were careful to point out, the employe had not signed a final receipt (220 Minn. 539, 20 N. W. [2d] 394), and for that reason and the further one that the employer had failed to obtain an order under § 176.34 for termination of compensation payments the discontinuance of payments there was wrongful. Consequently, as we pointed out, the employer there was in default in failing to make payments when due. Liability there was predicated on the default. Here, the employer was guilty of no default in not making payment of compensation when due, because payments were terminated pursuant to the final receipt, and the commission did not disapprove the settlement evidenced by it. It was the proper way to proceed, under our decision in Nyberg v. Little Falls Black Granite Co. 192 Minn. 404, 256 N. W. 732, *supra.*

Since the employer here had done all that was required of it, it was not in default. Neither the employe, the physicians called into the case, nor the commission could find, until 11 years had elapsed after the employer had fulfilled its entire duty under the act, that there remained anything further on its part to be done. What should be required of an employer? Should he be compelled to offer to pay compensation where the employe admits none is due, and

where the employer, the employe, the physicians in the case, and the administrative agency charged with the enforcement of the act at the time are aware of no basis for further liability? If so, where are tenders of compensation admittedly not due to stop? Of course, law and common sense compel the conclusion that there is no default in such a case and no liability for interest.

■ In view of the fact that the employer has prevailed on this writ, this court cannot under § 176.31, subd. 2, award the employe a penalty in addition to compensation upon the ground that the defenses interposed presented no real controversy, but were merely frivolous. Bradtmiller v. Liquid Carbonic Co. 173 Minn. 481, 217 N. W. 680. See discussion of liability for penalties for failure to pay taxes, where the amount of the taxes themselves had not been established, in the County of Redwood case (40 Minn. 524, 42 N. W. 477-478).

Our conclusion is that on this record the employe was entitled to an award of compensation of $875 for 25 percent permanent partial disability of his left hand and wrist movement or of his left hand and lower forearm—it makes no difference which it is—but not of the whole arm, together with interest thereon from the date of the filing of the claim petition to recover the same as further compensation, and not from the date of the final receipt. If the commission has any basis for setting aside the stipulation for "deciding" employe's disability upon the medical statements, it may do so upon notice to the parties and grant a rehearing; but so long as the stipulation remains in effect it cannot make any award not consistent with such medical statements.

Reversed and remanded with directions to proceed in accordance with opinion.

FRANK T. GALLAGHER, JUSTICE (concurring specially).

I concur in the opinion of Mr. Justice Peterson except as it holds that under the petition and evidence the commission's finding that employe suffered a 25 percent permanent partial disability in his left arm is not sustained. As to this issue, I am of the opinion that

the evidence properly submitted and received is sufficient to sustain the commission's finding thereon.

THOMAS GALLAGHER, JUSTICE (dissenting).

## I.

### EVIDENCE SUSTAINS FINDING OF 25 PERCENT PERMANENT PARTIAL DISABILITY OF LEFT ARM

1. I am of the opinion that the record amply sustains the commission's finding that employe suffered a 25 percent permanent partial disability of his left arm as a result of the accident.

At the outset it may be noted that the compensation act (§ 176.11, subd. 3[13]) provides that *"for the loss of a hand, including the wrist movement,"* compensation is limited to a maximum of 66 2/3 percent of the daily wage at the time of the injury for a period of 175 weeks, while compensation for loss of an arm is limited to a maximum of 66 2/3 percent of the daily wage for 200 weeks (§ 176.11, subd. 3[14]). On the basis of the wages received by employe at the time of his injury, if his disability is now limited to 25 percent of the left hand and wrist, his unpaid compensation for this would amount to $875, while if it covers 25 percent disability of the left arm, as the commission determined, it would amount to $1,000, a difference of $125. It is also to be noted that § 176.11 makes no specific provision for *loss of the use of the hand and lower forearm,* as determined in the medical report of Dr. Malmstrom.

2. At the opening of the hearing before the referee, counsel for employe stated:

"Mr. Gillette and I have agreed that we will submit the medical statements of Dr. Malmstrom, who examined the employe, and also of Dr. Bowen of Hibbing, and these will be used for the cause of deciding what medical disability, if any, the employe has."

Nothing therein manifested the intention of the parties that the medical reports *alone* were to form the basis of any disability finding here. Rather, it seems apparent that it was intended thereby to eliminate the need for the personal presence of these two medical witnesses. Notwithstanding this, it is urged in the majority opinion

that such language in effect (1) limited to such reports alone the evidence on the issue of disability; (2) bound the commission to determine such issue exclusively on such reports and the conclusions therein; and (3) compelled a finding of disability limited to 25 percent of loss of use of the left hand and wrist movement.

Neither counsel herein proceeded upon such a theory. Both recognized the right to present additional evidence on the question of disability. Both agreed to the submission thereof without objection. Neither urged upon the commission that the foregoing statement limited the trial herein or the commission as above described.

Thus, employe was permitted to testify without objection in substance that a chunk of ore had struck his left *arm* and knocked him off the bank on which he was working; that thereafter this *arm* was carried in a sling; that thereafter this *arm* pained and still pains him; that his left *arm* bothered him in 1935 and has been bothering him all the time.

He was requested to stand and demonstrate before the referee the limitation of movement in his hand and *arm,* and he did so without objection. In his demonstration he showed how much he could move his hand, how much he could twist his *arm* sideways, and, finally, he was requested to and attempted to put his left hand to his head. It is quite obvious that in making this demonstration he was obliged to bring into use his entire left arm, not merely his left forearm. Certainly it would be difficult for him to twist only the lower portion of his arm sideways or to raise his hand to his head by bending his forearm only. It is clear therefrom that the referee had ample opportunity to observe the extent of employe's disability and to determine whether it extended to his entire left arm or was limited to only the left hand and wrist.

Physical demonstrations in court are permissible and regarded as valid evidence for consideration by the triers of fact, even though the actual demonstration cannot be incorporated within the record any more than can a jury's authorized view of the locus of an accident or its view of other stationary physical objects in litigation. Hatfield v. St. Paul & Duluth R. Co. 33 Minn. 130, 22 N. W. 176;

Adams v. City of Thief River Falls, 84 Minn. 30, 86 N. W. 767; Brown v. Douglas Lbr. Co. 113 Minn. 67, 129 N. W. 161.

3. Additional evidence on the question of disability in the form of an X ray of employe's left arm, taken on June 11, 1935, which formed part of the commission's file herein, was offered and received by agreement of counsel. It was viewed and considered by the referee, and with reference thereto he stated:

"It shows a pretty good healing at that time, but a fracture of that nature healing that rapidly in a man of his age would be a little unusual. It is possible, but it's pretty rapid."

Also, in the commission's file thus received in evidence, by agreement of counsel there were (1) a letter from the commission to the insured; (2) a medical report from Dr. O. E. Saarf, of Buhl, Minnesota, to the commission; and (3) a certificate signed by Dr. R. P. Pearsall on the reverse side of the "final receipt," *all of which bore on the question of employe's disability.*

4. It is clear from the foregoing that, regardless of the original statement of counsel, both parties herein waived any limitation therein and adopted a course of conduct at the trial manifesting a procedure under which the commission in arriving at its decision might well consider the additional evidence thus received.

Section 176.54 specifically provides:

"The commission, or a commissioner or a referee, in making an investigation or conducting a hearing under this chapter, shall not be bound by common law or statutory rules of evidence *or by technical or formal rules of pleading or procedure,* except as provided by this chapter; *and shall* make such investigation or inquiry or *conduct such hearing in such manner as to ascertain the substantial rights of the parties.* All findings of fact shall be based only upon competent evidence." (Italics supplied.)

I feel that the construction in the majority opinion placed upon the opening statement of counsel is formal and highly technical and thus in direct conflict with the foregoing statutory provisions and the broad, liberal construction in favor of the employe con-

templated by the act in matters relating to pleading, procedure, and evidence.

5. But even accepting the construction placed by the majority opinion on counsel's statement, an examination of the medical reports in question indicates that therein there is ample evidence to sustain the commission's finding that employe had suffered a 25 percent loss of the use of his left arm. Certainly nothing therein would compel a determination limiting the disability to the left hand and wrist. Dr. Malmstrom, in his report of April 14, 1945, states that employe at the time of the examination described his inability to rotate his left hand in supination; that the pain in his *neck, left shoulder, and left elbow region radiated down to his hand;* that there was loss of strength in his left forearm and hand; and that there was a tendency to feel the effect of heat and cold therein. Thereafter, the report indicates a finding by Dr. Malmstrom of a slightly smaller musculature of the *left upper extremity,* with definite bowing of the left forearm "ventrically," causing a deformity of about one-half to three-fourths of an inch horizontally, occurring at the junction of the proximal middle third of the forearm; disability of the left hand, wrist, forearm, and *elbow;* and a grating of the middle portion of the left forearm. From such examination and by reason of the foregoing, he concluded that employe had sustained—

(1) 35 to 40 percent loss of use of the hand;

(2) 10 to 15 percent loss of use of lower forearm;

(3) 25 to 30 percent loss of use of both (hand and lower forearm).

There is no finding therein of 25 to 30 percent loss of the use of hand and wrist movement as related in the majority opinion, and there is no specific provision in the act which covers loss of the use of the hand and forearm, as found by Dr. Malmstrom.

These findings were for the most part confirmed by the medical report of Dr. Bowen, who found the *left arm* measurements smaller than those of the right arm; moderate bowing of radius of the *left arm;* loss of one-third of grip of left hand as compared with right;

and arthritic lipping at the *left elbow,* which accounted for the pain. It was his conclusion that employe suffered a 25 percent loss of the use of the hand and wrist.

If I understand the majority opinion correctly, it is held therein that this latter finding must form the basis of the referee's determination herein. It is to be noted that under Dr. Malmstrom's estimates the statute provides payment as follows:

40 percent loss of use of hand .......................... $1,200
35 percent loss of use of hand.......................... $1,050
30 percent loss of use of both hand and wrist (if the final finding may be thus construed)....................... $1,050

Each of said figures exceeds the amount allowed by the referee. Only the minimum figure arrived at by Dr. Malmstrom, together with Dr. Bowen's estimate, equals the maximum which can be found due under the majority opinion.

6. Further, I do not concur in the doctrine expressed in the majority opinion that before disability may be found as to employe's entire arm some evidence of actual trauma above the elbow must be shown. It is obvious that paralysis, arthritis, and like ailments which sometimes follow an injury may attack only the forearm. Can it be doubted that their effect may be felt on the entire arm, or that they may affect or limit the use thereof? The correct rule governing such a situation is expressed in Olson v. Griffin Wheel Co. 218 Minn. 48, 55, 15 N. W. (2d) 511, 514, 156 A. L. R. 1338:

"* * * It has been repeatedly held by this court that it is the actual disability resulting from an industrial accident, and *not the nature or location of the specific injuries,* that determines the extent of compensation under our compensation act." (Italics supplied.)

See, also, State ex rel. Kennedy v. District Court, 129 Minn. 91, 151 N. W. 530; State ex rel. The Broderick Co. v. District Court, 144 Minn. 198, 174 N. W. 826; State ex rel. Albert Lea Packing Co. Inc. v. District Court, 146 Minn. 283, 178 N. W. 594.

In the Kennedy case, the evidence disclosed that the bones of the hand were crushed and the ligaments of the wrist and forearm torn. The only evidence of injury above the elbow was that muscles in the shoulder were strained. Nevertheless, the case was remanded to the trial court with directions to make findings on the question of disability of the entire arm. Therein we stated (129 Minn. 93, 151 N. W. 531):

"We think the trouble arises largely, if not wholly, with the attempt of the trial court to separate the injuries into two units, those to the hand, and those to the arm. *The record does not leave it entirely clear whether the court intended to find a permanent partial disability in the arm above the elbow.* The evidence shows that the bones of the arm that were crushed and the ligaments that were torn were wholly in the wrist and in the forearm, but *there is some evidence that muscles in the shoulder were strained.* \* \* \* We think that injuries between the elbow and the wrist should be considered injuries to the hand. \* \* \* If there were no injuries except to the hand and forearm, we think the court should have awarded compensation based upon a percentage of total disability to the hand. *If there were permanent injuries to the arm above the elbow, the court should not have attempted to separate these injuries from those to the hand, but should have found the percentage of total disability to the arm as a whole,* and should have awarded compensation accordingly. \* \* \*

"*We are unable to say what percentage of total disability the trial court would have found if it considered the disability of the arm as a whole,* or if it had found a permanent partial disability to the hand alone, and the evidence does not warrant us in fixing the proper compensation. The case must go back to the trial court for new findings in line with the views we have expressed." (Italics supplied.)

In the instant case, where the evidence discloses disability and pain to the *left shoulder, arthritic lipping at the left elbow, a smaller musculature of the left upper arm,* and other disabilities relating to

the entire arm, it was well within the province of the commission to make a finding of disability to the entire arm.

7. It cannot be questioned that under the act the ultimate determination of disability is a question of fact for the commission. This rule is expressed in Gurtin v. Overland-Knight Co. 179 Minn. 38, 39, 228 N. W. 169, as follows:

"Three physicians, all of whom were competent and straightforward, were the only witnesses. They fixed the impaired ability at 25 per cent. The injured man was before them, and they as witnesses described his injuries and gave their opinions. *They could not conclude the commission by their testimony.* Whether the physicians have a standard by which they determine the extent of permanent partial disability does not appear; but in any event *the statute does not prescribe a rule or method of determining the extent of disability. It is left to the judgment of the trier of fact.* The testimony of physicians is useful. \* \* \* But the amount of disability is a question of ultimate fact for the commission." (Italics supplied.)

See, also, State ex rel. Globe Ind. Co. v. District Court, 136 Minn. 147, 161 N. W. 391; Kruchowski v. Swift & Co. 201 Minn. 557, 277 N. W. 15.

8. It is urged that the foregoing rule has no application here in view of the limitations placed upon the commission by virtue of the petition and opening statement of counsel. I have previously indicated that this action was not tried on the basis of any limitations expressed therein. I have likewise directed attention to § 176.54, which requires the conduct of hearings in such manner as to ascertain the substantial rights of the parties, not limited by any common-law or statutory rules of evidence or technical or formal rules of pleading or procedure. With such provisions in mind, it is my opinion that under the foregoing authorities the final determination of the question of disability in this case was a matter solely for the commission; that in its determination thereof it was not concluded by the medical reports above referred to; and that it had ample

evidence to sustain its finding that employe here suffered a 25 percent loss of the use of his left arm.

## II.

### INTEREST

It is the position of the majority that interest should be allowed only subsequent to the rehearing herein, because (1) there was no express contract to pay interest; (2) until such rehearing there was no ascertainment of the debt, and hence no default therein giving rise to interest; and (3) that delivery of the "final receipt" terminated employer's liability for principal and interest, at least until the rehearing.

1. The general principles governing interest, as expressed in the majority opinion and as embodied in the above summary, were entirely applicable when this court on three prior occasions considered the subject in relation to workmen's compensation. Reese v. National Surety Co. 162 Minn. 493, 203 N. W. 442; Brown v. City of Pipestone, 186 Minn. 540, 245 N. W. 145; Bourdeaux v. Gilbert Motor Co. 220 Minn. 538, 20 N. W. (2d) 393. Therein, interest was allowed upon the theory of *default in a contractual obligation* of the employer to make compensation payments at the times provided for by the compensation act. *Interest was allowed from the date compensation payments became due under the act, even though the commission did not act on the controversy or ascertain the exact amount due until long subsequent to such statutory due dates.*

In the Reese case, this court stated (162 Minn. 496, 203 N. W. 443):

"The compensation act provides for the time at which payments of compensation shall commence. The award of the commission is somewhat akin to a judgment for damages for *breach of contract.* In such cases interest is recoverable where the amount does not depend upon any contingency. Dunnell, Minn. Dig. § 2524." (Italics supplied.)

In the Brown case, these doctrines were expressed as follows (186 Minn. 542, 245 N. W. 145):

*"* * * Compensation in this state is a liability arising out of the contract of employment,* and the compensation act becomes a part of every contract of employment. * * *

*"Here was a contract debt due at the times when the compensation instalments should have been paid under the provisions of the act, and we see no reason why it should not, like any other debt, bear interest at the legal rate when it is subsequently decided that the debt existed. * * *

*"* * * it seems more logical and more just that interest should be allowed at the legal rate on sums that the contract of employment by implied inclusion of the statute made due and payable of a date certain. That the commission or court does not act upon the controversy until a subsequent date should not alter the liability for interest."* (Italics supplied.)

This rule was followed in the Bourdeaux case. There, the employer served notice of discontinuance of compensation, and the employe acquiesced therein. Ten and one-half years later, the commission awarded further compensation, but denied interest thereon, on the ground of laches. Subsequently this court reversed the commission and awarded interest on the additional compensation then found due, but from its original due date under the compensation act. Therein we stated (220 Minn. 541, 543, 20 N. W. [2d] 395):

"While it may be true that, where interest is given as damages, there may be cases where laches may bar recovery, * * * this is not such a case. * * * *We are here concerned with a consideration of employer's obligation under our workmen's compensation act,* which we have held should be construed liberally in employe's favor. *Under that act, it is made the duty of employer to commence payment of compensation at the time and in the manner prescribed by the act without the necessity of any agreement or order.* * * *

"Thus, even though it may be said that payment of interest here is by way of *damages,* the requirements of the act being infused into the contract, *the duty to pay interest arises by reason of the statutory obligation to make the compensation payments at the stipulated*

*times.* When the employer suspended payments, by reason of which it had the use of the money which should have been paid at intervals to the employe, it did so at the peril of being required to pay interest on these payments should it subsequently be decided that such payments were improperly suspended. *The duty to pay such interest arises impliedly, as a matter of law, from the contractual obligation to make compensation payments at the stipulated times required by the statute.*

\*  \*  \*  \*  \*

"\* \* \* No claim is made by respondents that laches should bar the recovery of the *principal* payments of compensation. Under a statute of this kind it seems inconsistent to us that laches should not bar the recovery of the *principal* payments of compensation and yet bar the *interest.*" (Italics supplied.)

2. It is contended, however, that the "final receipt" in the instant case distinguishes it from the Bourdeaux case, and that here such receipt terminated liability for interest until the commission at the rehearing had determined that additional compensation was due.

When this "final receipt" was delivered, employe protested that his recovery was not complete. He was assured by his employer's foreman that, if so, the execution thereof would make no difference. The receipt acknowledged "settlement and satisfaction of all claims for compensation or damages, *subject to review as provided by Law,*" thus indicating that it did not mark final termination of employer's liability. Thereafter, employe several times made written protests to the commission of his continuing disability. On one such occasion a medical examination was ordered, but thereafter no further allowance was authorized. The commission's order therein was never reduced to judgment, nor had certiorari ever issued from this court for its review prior to the rehearing.

3. Section 176.34 undertakes to prescribe the procedure for termination of an employer's liability for compensation payments. Thereunder, the majority opinion concedes that there are two methods by which such liability may be terminated, namely (1) by obtaining from the employe a "final receipt" and filing the same

with the commission; (2) by filing a "proposed discontinuance of payment," with medical reports attached, when the employe refuses to sign such a receipt.

Neither of such methods alone results in a *final* termination of such liability. The employer must be held cognizant of the provisions of § 176.34, to the effect that an order of the commission terminating liability based either upon a *final receipt* or upon *notice of discontinuance* is subject to review here, and subject to the right of the commission to set aside the same and grant a new hearing, under § 176.60, prior to such review.

Section 176.34 specifically provides that the *notice of discontinuance* shall *"operate as a suspension of payment of compensation* until the right thereto can be investigated, heard, and determined as herein provided."* (Italics supplied.) Thereafter, under the act, the *commission,* as distinguished from the *employer,* is required to investigate and determine whether such liability has actually terminated, and, if not, upon a hearing to order further payments. *No further responsibility is placed on the employer.* We have held that the filing of a *final receipt* similar to the receipt filed herein under § 176.34 *suspends* but does not *terminate* liability for compensation. Tuomi v. General Logging Co. 196 Minn. 617, 265 N. W. 837. Likewise, we have held that the filing of a *notice of discontinuance suspends* but does not *terminate* liability for compensation. Hawkinson v. Mirau, 196 Minn. 120, 264 N. W. 438, 265 N. W. 346. This is in strict compliance with the language of the act. In either case, the commission is empowered, upon application for rehearing, to set aside its prior order and determine whether additional compensation is due. Prior to the 1933 amendment to § 176.34 (L. 1933, c. 74), the rule was otherwise. See, Johnson v. Jefferson, 191 Minn. 631, 255 N. W. 87; Rosenquist v. O'Neil & Preston, 187 Minn. 375, 245 N. W. 621; Terres v. International Fuel Co. 208 Minn. 259, 293 N. W. 301.

4. It is further suggested in the majority opinion that interest was allowed in the Bourdeaux case because the employer *wrongfully discontinued making payments upon mere notice, without having*

*first obtained an order under § 176.34 terminating its liability.* This would imply that the employer was guilty of some misconduct or statutory violation justifying the allowance of interest. The record in that case indicates the contrary. The employer there proceeded to terminate liability by filing the required *notice of discontinuance* specified in § 176.34. Thereafter, no further responsibility rested upon it under said statute. The commission, as required thereby, notified the employe that such notice had been filed and advised him that if nothing was heard from him with reference thereto the commission would close its file. The employe made no reply to this notice, nor did he sign a final receipt. It did not hold the investigation or hearing or issue the order specified in § 176.34. Its omissions in this respect certainly did not constitute wrongful conduct on the part of the employer, which had fulfilled its obligations under the statute and whose obligation to make payments thereafter was suspended therewith.

5. As previously indicated, interest was allowed in the Bourdeaux case because of employer's improper discontinuance of or default in making compensation payments due by virtue of the *contract* which the compensation act infuses into every employment agreement. *The impropriety of the discontinuance was the default in the contractual obligation, and not the failure to obtain an order under § 176.34.* The opinion makes this clear. There is nothing in the opinion that can be construed as a holding that interest was allowed as a penalty because the employer wrongfully discontinued payments without obtaining an order under § 176.34 terminating its liability. Such a holding would in effect constitute the imposition of a penalty upon the employer because it had not taken over and performed the duties imposed by the act upon the commission.

6. There is no logical basis for applying a rule in the instant case different from that applied in the Bourdeaux case. The facts are substantially the same, and the principles applicable should be identical. In each case, the employer sought to terminate liability by one of the statutory modes prescribed in § 176.34. Neither of such modes, *i. e.*, giving the *final receipt* or filing *notice of discon-*

*tinuance,* nor any order based thereon, finally terminates such liability. In both cases, the commission at any time before judgment or certiorari had the right to order a rehearing and subsequently to order further compensation payments. In both cases, long periods of time had elapsed before such rehearing was sought by the employe. (In the Bourdeaux case the doctrine of laches was held inapplicable in compensation cases.) In neither case did the employer violate any provision of the act. In the instant case, at least, the employer was aware of claims of further disability after the attempt to terminate under § 176.34. In both cases, the liability for compensation arose out of the contract infused into the employment agreement by the compensation act. In both cases, such contract became in default by virtue of the suspension of compensation payments. In both cases, the commission subsequently ordered a rehearing. In both cases, the amounts in default were ascertained long subsequent to the due dates thereof. In both cases, the liability for principal compensation payments was held suspended only until such subsequent determination. In the Bourdeaux case, additional compensation was found due upon the rehearing and interest allowed thereon from the original due date thereof because of default in the implied contract. In the instant case, additional compensation was found due upon the rehearing, but back interest is now denied thereon because, as indicated in the majority opinion, there was *no contract* calling for the payment of interest; there had been *no ascertainment of the debt due,* and hence no default therein; and the *final receipt* method prescribed under § 176.34, as distinguished from the *notice of discontinuance* mode, *terminated* liability therefor.

In my opinion, there is no consistency in the principles applied in the two cases. If the Bourdeaux case is correct, it should be followed here. If it is not sound, it should be overruled. It cannot logically be distinguished.

7. The allowance of interest on past-due payments in compensation cases has been upheld in many jurisdictions. Brownfield v. Southern Amusement Co. (La. App.) 198 So. 670; Fryou v. T. Aucoin & Sons (La. App.) 5 So. (2d) 193; Sunny Point Packing Co. v.

Faigh (9 Cir.) (Alaska) 63 F. (2d) 921; Texas Employers Ins. Assn. v. Suttles (Tex. Civ. App.) 57 S. W. (2d) 624; Hazard Blue Grass Coal Corp. v. Scott, 206 Ky. 759, 268 S. W. 548. See, Horovitz, Workmen's Compensation, p. 354. I do not feel that the allowance of interest would constitute an injustice in the instant case. By virtue of the commission's holding, it has been determined that a substantial sum in compensation benefits rightfully belongs to employe, and that because of mutual mistake of the parties the employer has retained the same for approximately 11 years, during which it has had the continued use thereof. It would seem only fair that employe, now found to be the true owner of this fund throughout this period, should be reimbursed for his loss thereof.

For the reasons expressed, I dissent from the majority opinion.

MR. CHIEF JUSTICE LORING, having been on the pardon board when this case was heard, took no part.

