## YANTHIS ET AL. v. KEMP ET AL.

[No. 6,690. Filed October 27, 1908. Rehearing denied December 10, 1908. Transfer denied January 26, 1909.]

1. RELIGIOUS SOCIETIES.— *Doctrine.*— *Property Rights.*— *Courts.*— Courts cannot determine doctrinal religious controversies, except where they are incidentally involved in a determination of property rights. pp. 205, 206.
2. RELIGIOUS SOCIETIES.—*Creed.*—*Membership.*—*Powers of Majority.*—*Property.*—The majority of the members of a church cannot appropriate the church property to practices and usages in violation of the adopted faith and teachings of such church, adherence to such faith and teachings being a condition of membership. pp. 205, 206, 207.
3. RELIGIOUS SOCIETIES.—*Property.*—*Title.*—*Trusts.*—The property of a religious denomination is held in trust for the promulgation of the doctrines of such denomination; and the title to such property is in that part of the denomination which is acting in harmony with its laws, customs, and principles. p. 206.
4. PLEADING.—*Complaint.*—*Religious Societies.*—*Diversion of Property.*—*Rights of Members.*—A complaint alleging that the plaintiffs are the legal trustees of a certain church, that the pastor and the majority of the members are using the church property for immoral purposes, setting out the character of such use, and demanding possession of such property, is sufficient. pp. 207, 208.
5. EJECTMENT.—*Church Property.*—Ejectment is a proper method for the recovery of real estate belonging to a church, where such property is being used in violation of the teachings of such church. p. 209.

From Marion Circuit Court (15,371); *Henry Clay Allen*, Judge.

Action by George Yanthis, and others, as trustees of the Second Baptist Church of Indianapolis, against William Kemp and others. From a judgment for defendants, plaintiffs appeal. *Reversed.*

*Franklin McCray* and *A. R. Hovey*, for appellants.

*William H. Ogborn, Thomas A. Daily* and *Elias D. Salsbury*, for appellees.

ROBY, J.—This is an action by the appellants, as trustees of the Second Baptist Church of Indianapolis, against the

appellees, who also claim to be trustees of such church, for possession and control of the church property, building, records, books, moneys, etc., and for judgment for $200, which amount had been appropriated to pay attorneys' fees in a case wherein the pastor of said church had been convicted on a charge of bastardy.

The action of the circuit court in sustaining a demurrer to the complaint is assigned as error, and the sufficiency of that pleading is the only question to be decided.

The complaint, after setting forth the organization of the church and parts of its accepted and adopted rules, articles of faith, doctrine, practice and discipline, alleges that the so-called pastor of the church, who was employed by the defendants, was guilty of adultery and bastardy, and had been convicted and fined therefore; that he was guilty of frequent intoxication, assault and battery, profanity, of neglecting and refusing to pay his just debts, of refusing to be governed by any discipline, of declaring he would stay in the pulpit "in the face of hell" until he died, of causing the church to be suspended from the Baptist Association, by reason of his immorality, of causing the arrest of members of the congregation on false and unfounded charges, and of other immoral and sinful conduct. It is further alleged that the defendants and other members of the congregation (a majority thereof) concurred in and approved of the conduct of said minister; that such former trustees thereby deposed themselves from office; that, such office being abdicated, appellants were duly and lawfully elected to it, and have vainly demanded possession of the property described. The prayer is for judgment against the defendants for possession of the property, and for certain sums appropriated to defend the pastor on bastardy charges.

Appellees urge that a majority of the members of the congregation have upheld the pastor and themselves in all

their acts, have not deposed them from office, that

1. they are still the legal trustees of the church, and that the dispute in this case is one of which this court has no jurisdiction, and which must be decided by an ecclesiastical tribunal. Civil courts cannot determine questions of a purely ecclesiastical nature. All such controversies, so far as possible, should be settled by the organizations themselves; but, when such questions become facts upon which property rights depend, the civil courts may decide them. *Smith* v. *Pedigo* (1896), 145 Ind. 361, 19 L. R. A. 433. The question upon which this congregation divides itself, however, is not an abstract doctrinal question of creed or mode of worship, but one which has to do with the conduct of its members from the view-point of Christian morality, one of the first essentials of the Christian religion in the present age. A high moral standard is enjoined by the constitution, "rules, articles of faith, doctrine, practice and discipline" of the Second Baptist Church of Indianapolis.

If the facts alleged are true, the Rev. Charles H. Johnson and a majority of the members of said church are not practicing Christian virtues, but, while professing said

2. doctrine, so far as the complaint shows, are setting at naught the mandate of the Scripture and the church. The question for decision, then, is whether the majority of the members of a church, over the objection of a minority, can divert the church revenues and subvert the church property to immoral uses. Whether a majority or a minority ratified the unlawful acts of the pastor matters not. A majority cannot ratify and confirm acts violative of the adopted faith and teachings of the church. See *Mt. Zion Baptist Church* v. *Whitmore* (1891), 83 Iowa 138, 49 N. W. 81, 13 L. R. A. 198; *Smith* v. *Pedigo, supra; Roshi's Appeal* (1871), 69 Pa. St. 462, 8 Am. Rep. 275. Adherence to the doctrine of a religious corporation (one of which is al-

ways morality) is a condition of membership. *Trustees, etc.,*
v. *Halvorson* (1890), 42 Minn. 503, 44 N. W. 663. The
property of a church is held in trust for the promul-
3.   gation of the tenets and doctrines of that church, and
the title to church property is in that part of the
congregation which is acting in harmony with its law,
usages, customs and principles. *Smith* v. *Pedigo, supra;*
*Roshi's Appeal, supra; White Lick Quar. Meet., etc.,* v.
*White Lick Quar. Meet., etc.* (1883), 89 Ind. 136; *Mc-
Ginnis* v. *Watson* (1861), 41 Pa. St. 9. Under the facts
alleged the appellants are entitled to possession of the
church property and to recover the amount claimed.

Judgment reversed, and the cause remanded, with instruc-
tions to overrule the demurrer to the complaint.


## On Petition for Rehearing.

Roby, J.—Doctrine, discipline and creed are not matters
of concern to the courts, except as they come incidentally
in question in the adjudication of property rights,
1.   and the settlement of ecclesiastical questions is most
wisely left to ecclesiastical tribunals. *Lamb* v. *Cain*
(1891), 129 Ind. 486, 510, 14 L. R. A. 518; *Gaff* v. *Greer*
(1882), 88 Ind. 122, 45 Am. Rep. 449; *White Lick Quar.
Meet., etc.,* v. *White Lick Quar. Meet., etc.* (1883), 89 Ind.
136; *O'Donovan* v. *Chatard* (1884), 97 Ind. 421, 49 Am.
Rep. 462; *Smith* v. *Pedigo* (1896), 145 Ind. 361, 19 L. R.
A. 433; *State, ex rel.,* v. *Cummins* (1908), 171 Ind. 112.
Appellee's counsel in their exhaustive and learned
2.   argument state that "we understand the rule to be
that it is only where there has been a radical depar-
ture from the doctrine for which the charitable use was es-
tablished that the courts will intervene." They further
state that there is no division between the parties upon any
question of baptism, predestination, personal election, or
other doctrinal point, which may be granted, but the facts

set up in the complaint and admitted by the demurrer bring this case within the exception stated by counsel, and show a radical departure from the principles for which the Baptist Church stands. Suppose it were charged that Johnson, with the approval of the trustees, had converted the church building into a house of. ill-fame, and that the funds of the church were expended to pay fines assessed in criminal proceedings against him, no one would deny the right of objecting members to sue for the possession of the property. Yet no question of baptism, predestination, personal election, etc., would be involved.

It is averred, after setting out various immoral acts on the part of Johnson, "that the defendants [appellees] herein at a public meeting joined said Charles H. Johnson in declaring that no church discipline, Bible or creed should or could govern them, but that they were a law unto themselves, and would do as they pleased, and if any member did not like the way they did he could get out of the church," and "that, ever since the selection and employment of said Charles H. Johnson by defendants herein, * * * said defendants have indorsed, encouraged, consented to, aided, abetted, directed and concurred in the unlawful, wrongful and sinful acts of said Charles H. Johnson, as above set forth." These allegations, taken in connection with others to which brief reference has been made in the opinion heretofore filed, leave no room to ascribe allegiance by appellees to the doctrines of the church as shown by the articles of faith incorporated in the pleading.

In the argument it has been assumed that a majority of the congregation approved the action of appellees, and this assumption was adopted in the opinion heretofore filed. Such approval would not legalize acts violative of the fundamental principles of the church. *Schnorr's Appeal* (1870), 67 Pa. St. 138, 5 Am. Rep. 415; *Bear* v. *Heasley* (1893), 98 Mich. 279, 57 N. W. 270, 24 L.

R. A. 615; *Reorganized Church, etc.,* v. *Church of Christ* (1894), 60 Fed. 937; *Sutter* v. *Trustees, etc.* (1862), 42 Pa. St. 503; *Jones* v. *Wadsworth* (1876), 11 Phila. 227. See, also, cases cited in former opinion. But the fact is that, so far from showing that a majority of the congregation approved the conduct of appellees in that behalf, the allegations, when considered in their entirety, show that no meeting of the congregation has been had at which the judgment of the members thereof was fairly obtained. It is averred that Johnson refused to comply with the requirements of the scriptures as to the government of the church as laid down in the discipline and adopted by the church, in this: That he declared in the public church meeting that "we [meaning the members of the church] need not bring them [the rules for governing the church] to the church meeting, as we will govern the meeting to suit ourselves;" that he refused to permit an orderly consideration of charges of immorality brought against him; that he "dismissed" various members without notice, on account of "rebellion against the pastor;" that he called and presided at a meeting attended by the appellees and a large number of nonmembers of the church, and, after declaring that he would never resign, went through the farce of tendering his resignation to said meeting, which was packed by appellees and Johnson for the purpose of refusing to accept such resignation. There are many other allegations which go to establish the fact that no meeting has been held at which an expression could be obtained from the members of the church, and, instead of showing that appellees and Johnson hold with the approval of a majority of the members, the showing is that they hold *vi et armis,* and therefore do not come within any adjudication in their favor by any authority of the church.

Appellants aver themselves to have been duly elected trustees of said church. The averments in this regard are extended, general, and embody various legal conclusions,

but there is enough on the subject averred to withstand a demurrer.

Ejectment is a proper method by which to determine the right to possession of the church property. *Lamb* v. 5. *Cain, supra; Smith* v. *Pedigo, supra.*

The property in question is dedicated to the uses of the Baptist Church. If appellants sustain the averments of their complaint, the effect will be to insure its use for such purposes. The property will not be taken away from any one who owns it nor given to any one who does not. If the parties are all as good Baptists as counsel for appellees assert, twenty-four hours ought to be a sufficient length of time in which to end this controversy.

The petition for a rehearing is overruled.