GETHSEMANE LUTHERAN CHURCH v. LEO J. ZACHO AND OTHERS.
GEORGE T. ZACHO, THIRD-PARTY PLAINTIFF.
LUTHERAN HIGH SCHOOL ASSOCIATION OF GREATER ST. PAUL AND ANOTHER, THIRD-PARTY DEFENDANTS.
VICTORIA JOHNSON AND ANOTHER, INTERVENORS.

92 N. W. (2d) 905.

November 7, 1958—Nos. 37,473, 37,500.

*William W. Essling,* for third-party plaintiff.
*Thomas Malone,* for intervenors.
*Fred N. Peterson,* for respondents.

KNUTSON, JUSTICE.

This case originally was commenced as a suit for specific performance of a contract to purchase some 22 acres of land in Ramsey County. Defendant George T. Zacho, by a third-party complaint, brought the Lutheran High School Association of Greater St. Paul, a corporation (which will be referred to hereinafter as the association), and Paul M. Krause into the action and sought reformation of the contract. Thereafter, Victoria Johnson and June Brasted were permitted to intervene in the action. The court granted summary judgment for plaintiff in the action to quiet title on the ground that no genuine issue of fact was in dispute, and, after a trial, intervenors' action was dismissed on the ground that they had no capacity to sue. Separate appeals have been

taken by George T. Zacho and intervenors.

To test the propriety of the order granting summary judgment, it must be assumed that the facts alleged by George T. Zacho are true and can be proved upon trial. He alleges that his mother, Margaret Zacho, was the owner of the property involved in this action and other real estate. She was somewhat incapacitated, and it was difficult for her to get around, so on December 4, 1948, she conveyed the property she owned to her son Leo J. Zacho solely for the purpose of facilitating the easy conveyance of such property as parcels thereof were sold. The deed to Leo J. Zacho was absolute on its face and did not show that he was acting as agent or trustee for Margaret Zacho.

Subsequent to this conveyance, negotiations occurred between Margaret Zacho and Paul M. Krause, who was the pastor of plaintiff church, which is affiliated with the Missouri Synod, relative to the purchase of a part of Margaret Zacho's land for the purpose of erecting thereon an all-Lutheran high school. Mrs. Zacho was not a member of the Missouri Synod church, nor are any of the Zachos mentioned in this litigation. Subsequent to these negotiations, the association was incorporated in June 1949. The purpose for which this corporation was organized, as stated in its constitution and bylaws, is as follows:

."The purpose of this Association shall be to own or rent, control, manage and maintain an accredited Junior-Senior High School in the County of Ramsey, State of Minnesota."

Membership in the association was limited by Article III of its constitution as follows:

"Section 1—Any communicant member, in good standing, of a Lutheran Church which adheres to all the canonical books of the Old and the New Testaments as the inspired Word of God and the following Symbolical Books as a true and sound exposition of the Word of God:
"a)  the three Ecumenical Creeds, viz., Apostolic, Nicene, Athanasian
"b)  the Unaltered Augsburg Confession
"c)  the Apology of the Same
"d)  the Smalcald Articles
"e)  Luther's Large and Small Catechisms

"f) the Formula of Concord, A. D. 1580 may become a member of this Association by contributing an annual sum as determined by the Association.

"Each member shall have the right to vote and to hold office. Such membership shall cease when the individual loses his communicant status in the Lutheran Church or when such individual fails to make annual contributions to the Association.

"Section 2—Any such congregation or organization therein which shall contribute an annual sum to the Association may acquire advisory membership. The officers of such organization shall be accorded the full privilege of the floor at any meeting, but shall not be entitled to vote or to hold office unless they, as individuals, hold membership in the Association."

Paul M. Krause, who then was the pastor of plaintiff church, was named as a member of the first board of directors and as the first president of the association. The first corporate act of the association was to execute the contract for deed involved in plaintiff's suit for specific performance under which it agreed to purchase about 22 acres of Margaret Zacho's land. The contract was executed by Leo J. Zacho and his wife as vendors, acting as agents for Margaret Zacho. The contract contains the following provisions, among others:

"(2) That no part of said described land shall be used by said party of the second part [the association], its successors or assigns, for any other than religious, educational and recreational purposes in connection therewith, for a period of twenty-five (25) years;

"(3) That whenever any part of said land is set aside by said party of the second part, its successors or assigns, for use exclusively as a field for recreational purposes, such recreational field shall be known, designated and dedicated by said party of the second part, its successors or assigns, as the Zacho Field;

"(4) That during said period of twenty-five years no part of said land shall be used or permitted to be used by said party of the second part, its successors or assigns, for any commercial purposes, except that said party of the second part may, at its option, renew any signboard or root beer stand lease now in force and effect."

The agreed consideration for the premises was $18,000, payable $400 upon the execution of the contract and the balance, without interest, in monthly installments of not less than $10 per month, commencing November 1, 1949.

It is claimed by George Zacho that the contract failed to include a provision that the land must be used for an all-Lutheran high school, as had been agreed upon between Margaret Zacho and Paul M. Krause, and that Mrs. Zacho had no knowledge of the fact that this provision had been omitted from the contract until some 3 years later when she had the contract examined after she began to wonder why a school had not been commenced on the premises. It is claimed that the land was worth much more than it was sold for and that Mrs. Zacho donated a part of the value of the property to the association in order that an all-Lutheran high school might be built thereon. It is conceded that the land is now worth much more than the purchase price.

Apparently it became impossible for the association to build a high school open to Lutherans of various synods for the reason that dissension arose between those originally interested in such a high school on the question of whether the school should be open to all Lutherans. As a consequence, unsuccessful efforts were made to transfer the land to some other Lutheran body who would build a high school. Thereafter the property was offered to plaintiff under the terms of a letter reading as follows:

"Whereas the Lutheran High School Association has made an offer of its property to congregations of the ALC, which offer was not accepted, and

"Whereas a like offer was made to congregations of the Lutheran Church—Missouri Synod, which offer was withdrawn when the Association failed to receive a reply after a period of eleven months, and

"Whereas it is the desire of the Association to see its present site used for the church and its work as early as possible.

"Therefore in meeting on November 29, 1954 the Association resolved to make a similar offer to Gethsemane Lutheran Church and empowered its Board of Directors to formulate the details and conditions which follow:

"1. That the property is to be used for the church and its work.

"2. That the first building to be erected should be a school.

"3. That the payment of the balance owed on the contract for deed to the property, a sum approximately seventeen thousand dollars, be made.

"4. That the Board receive and transfer the deed through proper legal channels whenever the money is available.

"5. That the entire transaction according to these stated terms be completed by January 1, 1956."

The offer was accepted in accordance with a letter of acceptance which reads:

"Many things have happened since you made the offer of the '21 acres' to Gethsemane with the stipulation that we follow the provisions of the contract for deed and use the property for the church and its work—particularly for the construction of a school which would look toward the ultimate objective of the Lutheran High School Association in providing for the Christian education of our teen-agers.

"We accept your offer by authority of the vote of our Congregation at its Annual Meeting of January 10, 1955.

"We are prepared at this time to make full payment according to the terms of your offer. However, you will realize that neither you nor we can obtain the deed to the property until we provide architect's drawings and specifications as well as duly signed building contracts. You will understand that we were held up in providing these items by virtue of the lawsuit that was pending. We are now negotiating with an architectural firm.

"At your discretion, we would ask that you accept a down-payment for which you will assign the contract for deed to us; or be prepared to accept the complete balance due on the property and hold it in escrow pending the arrangement to turn over the deed.

"Please let us hear from you at your earliest convenience."

The interest of Margaret Zacho has now been conveyed to George T. Zacho. He seeks to have the contract reformed so as to reflect the true intention of the parties and then to have it cancelled for failure on the part of the vendee in the contract to perform the same according to the

terms as so reformed.

Intervenors seek to have the assignment of the contract from the association to plaintiff annulled and the association dissolved and its assets distributed according to its constitution and bylaws.

The trial court granted summary judgment for plaintiff in the action to quiet title. Intervenors' action was tried before a different trial judge. The court there found that intervenors had no capacity to sue for the reason that they could not be members of the association and dismissed their action. Separate appeals have been taken, which have been heard together here. The appeal of George Zacho raises the question of whether questions of fact exist requiring trial. The appeal of intervenors raises only the question of whether the trial court was correct in dismissing the action on the ground that intervenors have no capacity to sue.

## THIRD-PARTY PLAINTIFF'S APPEAL

In his answer and in his third-party complaint, George Zacho alleges that in the year 1949 the association, under the direction and control of defendant Paul M. Krause and other officers and directors, entered into an agreement and contract with Margaret Zacho, under the terms of which she agreed to sell the real estate involved here for a nominal price and upon nominal terms without interest in consideration of an agreement on the part of the association to use the real estate for the purpose of Christian education. It is his contention that this agreement embodied the following conditions and provisions: That the association plan, build, construct, and maintain upon the land a Lutheran high school within a period of 3 years and to conduct and maintain such high school as an accredited junior-senior high school in accordance with approved academic standards without regard to synodical lines; that it conduct and maintain such high school for students of all creeds and denominations for a period of at least 25 years; that the association be open to membership in, management of, and participation by members of all Lutheran churches without regard to synodical lines; that it not sell or assign said land or any part thereof or interest therein for a period of 25 years; that it not use said land or any part thereof for any commercial purpose for a period of 25 years; and that it pay the pur-

chase price thereof in full within 3 years from the date thereof.

It is then alleged that, in acordance with this agreement, Margaret Zacho authorized and directed her agent, Leo Zacho, to execute such contract with the association; that Leo Zacho and his wife did sign and execute a purported contract for deed; that through inadvertence, mistake, oversight, and misrepresentation the contract did not contain or express the true and actual agreement between Margaret Zacho and the association; and that all this was done with the full and actual knowledge of the association.

George Zacho then alleges that the association has completely failed to perform said agreement, and he asks to have the contract reformed so as to conform to the true intention of the parties and thereafter to have it cancelled.

Apparently the theory of a constructive trust has crept into the litigation, and at a pretrial conference, at which the trial court concluded to grant summary judgment to plaintiff, the court was of the opinion that no trust could arise on account of M. S. A. 501.07;[1] therefore that the parties had no right to a reformation of the contract. In the argument here the theory of a constructive trust has been further emphasized.

It seems clear to us that § 501.07 presents no bar to a reformation of the contract if facts can be established giving a right to such reformation. If the facts alleged by George Zacho can be proved, it would seem he would be entitled to a reformation of the contract so as to conform to the true intention of the parties.

On the issue of a constructive trust, George Zacho contends that Margaret Zacho conveyed to her son Leo only for the purpose of facilitating the transfer of the property as it was sold. He alleges that Leo failed to include in the contract for deed running to the association the terms and conditions under which it was sold and that the association accepted the contract with full knowledge of the terms under which

---

[1]"When a grant for a valuable consideration is made to one person, and the consideration therefor is paid by another, no use or trust shall result in favor of the person by whom such payment is made; but the title shall vest in the person named as the alienee in such conveyance, subject only to the provisions of section 501.08."

Margaret had agreed to sell it. He also contends that plaintiff is chargeable with the same knowledge concerning the terms of the sale as was the association. It is his contention that, as a result, a constructive trust exists in his favor as the successor in interest to the legal title formerly held by Margaret.

The trial court was of the opinion that §§ 501.07, 501.08, and 501.09 barred any trust in favor of George Zacho. Obviously, § 501.08, which deals with the rights of creditors, and § 501.09 have no application here.

In Knox v. Knox, 222 Minn. 477, 25 N. W. (2d) 225, we held that § 501.07 has no application to a constructive trust. The true nature of a constructive trust is adequately stated in that case.[2] It is an equitable remedy intended to prevent the unjust enrichment of a person holding property under a duty to convey it or use it for a specific purpose.

While plaintiff and the association claim that they were bona fide purchasers without knowledge of the equities existing between Margaret and Leo, that claim is disputed and presents a question of fact. If, as George Zacho claims, they took with knowledge of such equities, they are chargeable as constructive trustees the same as Leo would be. In 4 Scott, Trusts (2 ed.) § 506, we find the following:

"Where a person in a fiduciary relation to another violates his duty as fiduciary, a third person who participates in the violation of duty is liable to the beneficiary. If the third person makes a profit through such participation, he is chargeable as constructive trustee of the profit so made.

"Where a fiduciary wrongfully transfers to a third person property which he holds as fiduciary, the third person is chargeable as constructive trustee of the property unless he is a bona fide purchaser. He is chargeable as constructive trustee if he received the property with notice of the transferor's breach of duty or if he gave no value even though he had no notice."

It has been held frequently that, where property is conveyed by the

---

[2]See, also, Wilcox v. Nelson, 227 Minn. 545, 35 N. W. (2d) 741; Dietz v. Dietz, 244 Minn. 330, 70 N. W. (2d) 281; Jennings and Shapiro, *The Minnesota Law of Constructive Trusts and Analogous Equitable Remedies,* 25 Minn. L. Rev. 667, 695.

owner to another to facilitate its management, a constructive trust exists in favor of the owner.[3]

Whether the parties proceed on the theory of a constructive trust or a right to reformation, it is clear that there are questions of fact that must be determined by the trial court from the evidence which the parties are able to produce. It was error to grant summary judgment.

## INTERVENORS' APPEAL

With respect to the capacity of intervenors to maintain their action, the evidence is that June Brasted paid a membership fee of $1 in November 1949. Such fee was good for one year if the individual had the qualifications necessary to become a member. She did not again pay any fee until May 1955. Victoria Johnson paid $1 in November 1949 and again in June 1955. Neither of them were members of a Lutheran church and neither of them retained such membership as they had up to the time of the trial.

In the complaint in intervention, intervenors allege that they were members of the association and bring the action on behalf of themselves and other members of the association. The answer of the association is a general denial, except as to certain admitted facts which are not involved here. In a pretrial conference, the following transpired:

"Mr. Malone: To save time, an essential part of your case will be contesting the fact whether we are not or are members of the corporation.

"Mr. Peterson: Yes.

"Court: Are you going to show that?

"Mr. Peterson: Yes.

"Court: The records will show who are the members.

"Mr. Peterson: We have them with us.

"Mr. Malone: The intervenors are willing to stipulate that they were members of the corporation from November 1949 to November 1950, and from May 1955 to the present date, skipping between May 1950 and 1955.

---

[3]See, Annotation, 35 A. L. R. 301.

"Mr. Peterson: I think you are right, and if you are that will kick you out of court, mister.

"Mr. Malone: I don't think it will.

"Court: Let us find out what the facts were.

"Mr. Peterson: Because that was on November 29th.

"Court: Have you got those dates?

"Rev. Krause: I have the record.

"Court: Get the record.

"Mr. Peterson: Show that to the judge, when they were members.

"Rev. Krause: Mrs. Brastad was a member from November 29th, when she made a payment which entitled her to a membership for one year, and the next payment was in May of 1955, and then Victoria Johnson—

"Court: In May of 1955 she became a member again?

"Rev. Krause: Yes.

"Court: And continued to May of 1956?

"Rev. Krause: She made an additional payment recently, which takes it up to the present date. And Mrs. Victoria Johnson made a payment in November 1949, and a second payment in June of 1955.

"Court: This assignment was made before either of them were a member.

"Mr. Peterson: That is right.

"Court: Is that correct?

"Mr. Malone: That is correct. I would not stipulate to the other one being June of 1955, but say both May of 1955, and that will serve your purpose to raise your motion.

"Mr. Peterson: All right."

Intervenors contend (1) that the pleadings preclude plaintiff and third-party defendants from challenging intervenors' capacity to sue; (2) that the stipulations set forth above, made at the pretrial conference, eliminated all issues relating to intervenors' capacity or authority to sue; and (3) that plaintiff and the association are now estopped from challenging intervenors' capacity to sue.

Ordinarily, where the parties stipulate as to what the facts are, all parties to the stipulation, as well as the courts, are bound by the

stipulation until it is abandoned. In such case, the stipulation takes the place of evidence,[4] but, where the parties at the trial abandon such stipulation and proceed to try the issue, they are bound by the results of that trial.

It is clear from the evidence in this case that under the constitution of the association neither of intervenors had the qualifications required for membership. The constitution provides not only that it is necessary to be a member of a Lutheran church to become a member of the association but that membership ceases if such affiliation with a Lutheran church ceases.

We need not determine whether failure to affirmatively allege incapacity to sue, as required by Rule 9.01 of Rules of Civil Procedure, is fatal here nor whether the so-called admissions or stipulations at the pretrial conference are binding upon the association for the reason that from the very beginning of the trial this issue was litigated by both parties. After a statement by the attorney for intervenors as to the nature of the case, Mr. Peterson, who appeared for the association, said:

"* * * It is our contention in this case that this June Brasted and Victoria Johnson never were members, that they are not members now and never were members, which is a direct violation of our statute providing that the action shall be brought by the real party in interest."

The first witness called by intervenors was Warren Loe, secretary of the association, who was called for cross-examination under the rules. He was examined extensively as to the nature of intervenors' contribution to the association and their status as members. Intervenors were not called as witnesses in their own behalf but were called for cross-examination by the attorney for the association. Thereafter their own attorney questioned them quite extensively regarding knowledge of the requirement in the association's constitution that they must be members of the Lutheran church in order to become members of the association.

Rule 15.02 of Rules of Civil Procedure provides that, where issues are litigated by express or implied consent of the parties, they are

---

[4]Lappinen v. Union Ore Co. 224 Minn. 395, 29 N. W. (2d) 8.

treated the same as if they had been raised by the pleadings.[5] The case now before us differs from Phelps v. Benson, 252 Minn. 457, 90 N. W. (2d) 533, in that in the Phelps case nothing was done to apprise the court or adverse parties that the admissions in the pleadings and pre-trial interrogatories had been abandoned. In that case we said (252 Minn. 476, 90 N. W. [2d] 546):

"* * * when essential facts are admitted by the pleadings or by admissions under Rule 36, they no longer are in issue until some action is taken to apprise the court and adversary that a litigant wishes to abandon the position he formerly has taken and change his course of procedure."

Here, obviously, the association, at the commencement of the trial, clearly indicated that the issue involving the capacity to sue was to be litigated. While it would have been better practice if the association had requested permission to amend its pleadings at the commencement of the trial, it seems that all parties understood that the issue was to be litigated and that it actually was litigated. Under these circumstances, it must be held that the stipulation entered into at the pretrial conference was abandoned and that the issue was litigated by consent.

While we have held that the equitable doctrine of ratification, acquiescence, and estoppel apply with the same force to a religious society as to stockholders in ordinary civil corporations,[6] courts should be slow in applying the doctrine of estoppel in such a way as to hold that an individual, seeking to interfere with the internal operation of a religious organization, is a member entitled to maintain such action when, under the constitution and bylaws of such organization, it is clear that such individual does not adhere to the teachings or faith of such religious order and could not become a member thereof. To so hold would permit a pure obstructionist to interfere with the internal operation of such organization.

Membership in a church or religious order stands on a somewhat

[5]See, Roberge v. Cambridge Co-op. Creamery Co. 243 Minn. 230, 67 N. W. (2d) 400.

[6]Norwegian Evangelical Lutheran Bethlehem Congregation v. United States F. & G. Co. 81 Minn. 32, 83 N. W. 487.

different basis from membership in other voluntary societies formed for business, social, or other nonreligious purposes. In Trustees of East Norway Lake Church v. Halvorson, 42 Minn. 503, 508, 44 N. W. 663, 666,[7] we said:

"* * * If the rules make adherence to particular doctrines a condition of membership, then, so long as those rules continue, the repudiation of such doctrines would seem to determine a member's right to remain in the congregation."

In Kittinger v. Churchill, 161 Misc. 3, 16, 292 N. Y. S. 35, 48, affirmed, 249 App. Div. 703, 292 N. Y. S. 51, involving an action in which the question arose as to whether a former member of a religious group had capacity to sue, the court said:

"* * * The usual rule applicable to religious societies is that the rights of a member are dependent on the continuance of his membership, and when he ceases to be a member his rights and beneficial interest in the society's property cease, and he no longer has standing to sue in relation thereto. * * *

"Nor does the fact that plaintiff may have made contributions to this association give him any right, after his withdrawal, to sue in relation to its affairs."

Here it is evident that intervenors could not become members of the association. Even those who could become members ipso facto ceased to be members when they ceased to be members of a Lutheran church. Under these provisions, we should be reluctant to hold that, by the equitable doctrine of estoppel, these individuals could be permitted to interfere with the affairs of the association. We think that the evidence amply sustains the court's findings that they were not members and could not maintain this action.

After the court had decided that intervenors were not members and

---

[7]See, also, Trustees of German Evangelical Society v. Henschell, 48 Minn. 494, 51 N. W. 477; Kompier v. Thegza, 213 Ind. 542, 13 N. E. (2d) 229; Yanthis v. Kemp, 43 Ind. App. 203, 85 N. E. 976, 86 N. E. 451; Finley v. Brent, 87 Va. 103, 12 S. E. 228, 11 L. R. A. 214; Skinner v. Holmes, 133 N. J. Eq. 593, 33 A. (2d) 819.

had no right to maintain their action, the court adopted a conclusion of law containing the following:

"The Court finds that the third-party defendants, Lutheran High School Association of Greater St. Paul, a corporation, and Paul M. Krause, are entitled to the judgment and decree of this Court, adjudging that the intervenors are not parties in interest, and that their complaint in intervention be dismissed, and that said assignment of the contract for deed to the Gethsemane Lutheran Church, a corporation, be adjudicated as valid and subsisting for all intents and purposes therein."

The only issues submitted to the trial judge were those raised by the intervenors' complaint in intervention. All other questions were disposed of by the summary judgment. The court could not find that intervenors had no interest in the litigation and dismiss their complaint and thereafter proceed to decide the case on the merits. The dismissal of intervenors' complaint disposed of the action. Any conclusion with respect to the merits of the case thereafter was a nullity.

Reversed as to the appeal of third-party plaintiff, George T. Zacho, and affirmed as to appeal of intervenors.