Elaine ABENDROTH, as Personal
representative of the Estate of
Francis Abendroth, Appellant,

v.

NATIONAL FARMERS UNION PROP-
ERTY & CASUALTY COMPANY, a
corporation organized and existing un-
der the laws of the State of Utah and
authorized to do business in the State
of Minnesota, Respondent.

No. C6–84–1517.

Court of Appeals of Minnesota.

Feb. 26, 1985.

Thomas A. Janson, Schmitt, Johnson & Marso, St. Cloud, for appellant.

Dean L. McAdams, McAdams & McAdams, P.A., Minneapolis, for respondent.

Heard, considered and decided by CRIPPEN, P.J., and FORSBERG and RANDALL, JJ.

## OPINION

CRIPPEN, Judge.

The parties executed an agreement stating that appellant had 55 percent loss of crops from hail. Based on evidence of the extent of damage, the trial court determined that appellant sustained hail damage of 2.5 percent to his crop. Appellant claims that the trial court was bound by the parties' agreement.

## FACTS

Francis Abendroth, now deceased, was a farmer in Wright County. On June 1, 1981, he purchased $17,500 of hail insurance from respondent insurance company for approximately 175 acres of soybeans located in Wright County.

Paragraph 2 of the Special Provisions section of the insurance contract provides:

We shall not cover any loss until the percentage of yield reduction per acre equals 5% or more of the crop, nor any loss in addition to a paid loss until such additional reduction in the yield equals 5% or more of the original crop.

The word "WAIVED" was superimposed over this paragraph.

At the time the crop was harvested, Abendroth expressed surprise that his yield was smaller than anticipated, and the local grain elevator employee informed him that the field had been hailed on during the last part of July or first part of August. Abendroth immediately notified the respondent's agent who sold him the policy. An adjuster was sent out to adjust the loss. The adjuster and Abendroth signed a "Non-Waiver Agreement" and a "Non-Waiver Loss Agreement" which noted that the field had sustained a 55.5 percent loss due to hail.

The Non-Waiver Agreement provides in relevant part:

It being the desire of the parties hereto to ascertain and determine without delay the percentage of loss and damage alleged to have been sustained by HAIL to the crops as described on the blank below on this sheet.

IT IS HEREBY MUTUALLY STIPULATED AND AGREED that any action taken in ascertaining the percentage of loss and damage by hail * * * shall not waive nor invalidate any of the conditions of the policy, nor of the application on which said policy was issued, and shall not waive nor invalidate any rights whatever of any party to this Agreement.

\* \* \* \* \* \*

THE SOLE OBJECT AND INTENT of this agreement being to provide for the determination of the percentage of said loss and damage, and an investigation of the circumstances, without regard to the liability of the Insurance Company, and to preserve all the rights of all the parties hereto.

Subsequently, respondent denied decedent's claim, because it found no evidence of loss due to hail.

Decedent sued to recover the amount of damages suffered, less the amount of the premium, plus attorney fees. Respondent counterclaimed for the amount of the premium.

Respondent's expert testified that the low yield resulted from a combination of late planting date, low soil fertility, and moisture stress. The expert noted that hail injuries would have resulted in physical evidence such as bruising, stem cutting, and defoliation, and that the adjusters found no such evidence.

The trial court made findings and entered judgment in favor of respondent for the amount of the premium owing, $1,050. It found that decedent had sustained hail damage; that the delay in reporting the damages by decedent was reasonable; that decedent failed to pay the insurance premium; and that decedent sustained less than 5 percent loss, and was therefore not entitled to recovery.

After the appeal was commenced, the trial court issued amended findings, that decedent had sustained 2.5 percent loss, and that the parties stipulated that the 2.5 percent loss was reimbursable under the policy. The court then concluded that decedent owed respondent $1,050, less the 2.5 percent hail damage loss, $437.50.

## ISSUES

1. Did appellant have standing to bring this appeal?

2. Did the "Non-Waiver Agreement" and "Non-Waiver Loss Agreement" executed by respondent's adjuster and decedent bind the parties to a determination that the crops sustained 55.5 percent damage due to hail?

3. Was a yield reduction of less than 5 percent attributable to hail reimbursable pursuant to the hail insurance policy, or is this issue moot due to the trial court's amended findings?

## ANALYSIS

■ 1. Respondent argues that Elaine Abendroth has no standing to bring this appeal. Until respondent sought to tax costs and disbursements after the trial, both parties assumed that Elaine Abendroth was the personal representative of decedent's estate. Respondent then discovered that she had not been appointed.

Since that time, Elaine Abendroth has been formally appointed special administrator of the estate for the limited purpose of continuing and concluding the lawsuit. *See* Minn.Stat. § 524.3–617 (1984).

Minn.Stat. § 524.3–701 provides:

The powers of a personal representative relate back in time to give acts by the person appointed which are beneficial to the estate occurring prior to appointment the same effect as those occurring thereafter. * * * A personal representative may ratify and accept acts on behalf of the estate done by others where the acts would have been proper for a personal representative.

Consequently, appellant properly participated in the trial and in this appeal.

■ 2. Parties may stipulate as to the evidence which will be considered by the trier of fact, and the stipulation is binding on a trial and appellate court as long as it remains in effect. *Lappinen v. Union Ore Co.*, 224 Minn. 395, 407, 29 N.W.2d 8, 17 (1947). All parties are bound by the stipulation, *Ketterer v. Independent School District No. 1*, 248 Minn. 212, 219–20, 79 N.W.2d 428, 435 (1956), until it is abandoned.

[T]he stipulation takes the place of evidence, but, where the parties at the trial abandon such stipulation and proceed to try the issue, they are bound by the results of that trial.

*Gethsemane Lutheran Church v. Zacho*, 253 Minn. 469, 480, 92 N.W.2d 905, 913 (1958) (footnote citing *Lappinen* omitted).

■ Where parties do not stipulate that the court is bound to consider only evidence permitted under the stipulation, and where the record is replete with other evidence, such other evidence may be considered. *Casey v. Northern States Power Co.*, 247

Minn. 295, 306–07, 77 N.W.2d 67, 74–5 (1956).

■ The purpose of the stipulation here appeared to have been to bind the parties as to the percentage of damage caused by hail. Nevertheless, stipulations may be abandoned. In *Gethsemane Lutheran Church,* the parties had stipulated to certain facts regarding capacity to sue at a pretrial conference. At trial, one party indicated that the stipulated issue was to be litigated, and it was actually litigated.

Under these circumstances, it must be held that the stipulation entered into at the pretrial conference was abandoned and that the issue was litigated by consent.

*Gethsemane,* 253 Minn. at 481, 92 N.W.2d at 914.

■ We have not been supplied with a transcript, and do not know how the stipulation was introduced, whether appellant objected to other evidence, or how the trial court exercised its discretion when receiving other evidence. The matter of vacating a stipulation is within the discretion of the trial court, and its action will not be reversed absent a showing of an abuse of discretion. *Anderson v. Anderson,* 303 Minn. 26, 32, 225 N.W.2d 837, 840 (1975). Oral testimony regarding the subject matter of the stipulation was received, and we have no basis to avoid concluding that the stipulation was abandoned by the parties.

Appellant contends the agreement documents should be reviewed de novo on appeal, and that we can determine whether they bind the parties. Appellant denies the need to defer to the trial court's assessment of the agreements, because this court is as able as the trial court to assess these documents. *In Re Trust Known as Great Northern Iron Ore Properties,* 308 Minn. 221, 225, 243 N.W.2d 302, 305, *cert. denied sub nom. Arms v. Watson,* 429 U.S. 1001, 97 S.Ct. 530, 50 L.Ed.2d 612 (1976).

■ However, here the court considered oral testimony as well as the written evidence to reach its decision as to the percentage of damage which decedent suf-

fered due to hail. Because we conclude that the trial court properly considered oral testimony about the subject matter of the stipulation, as well as the documentary evidence, we cannot reverse unless the trial court's findings were clearly erroneous. *Toombs v. Daniels,* 361 N.W.2d 801 (Minn., 1985). Minn.R.Civ.P. 52.01. From the limited record before us, it cannot be concluded that the trial court was clearly erroneous.

3. In its original findings, the trial court found that because the hail damage was less than 5 percent, appellant was not entitled to recover damages. The "special provisions" paragraph of the insurance contract provided that if the damage was less than 5 percent, no damages would be paid; however, the word "waived" was superimposed over this clause. Appellant contends that the trial court erred in this finding, because the 5 percent clause had been waived. After the appeal was commenced, the trial court issued its amended findings, finding that appellant suffered crop damages of 2.5 percent, and that the parties had stipulated that the 5 percent limit was waived.

■ Upon filing of the notice of appeal, the trial court can no longer alter the judgment being reviewed. *Evans v. Blesi,* 345 N.W.2d 775 (Minn.Ct.App.1984), *pet. for rev. denied,* (Minn. June 12, 1984), and its amended findings do not have any effect. However, the trial court's amended findings on this point have undisputed merit and we adopt them.

### DECISION

The appellant had standing to bring this appeal. The trial court properly allowed evidence regarding the extent of crop damage which decedent suffered, because the parties abandoned the stipulation. We adopt the trial court's amended findings that the decedent suffered crop damages of 2.5 percent, and that the parties had stipulated that the 5 percent limit was waived.

Affirmed.